**SUSAN MARTIN** (*Pro Hac Vice*)
**JENNIFER KROLL** (*Pro Hac Vice*)
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Ave. Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com

**KATHLEEN J. ENGLAND (NV Bar No. 206)**
**ENGLAND LAW OFFICE**
630 South Third Street
Las Vegas, NV 89101
Telephone: (702) 385-3300
Facsimile: (702) 385-3823
kengland@englandlawoffice.com

**MICHAEL D. LORE**  (*Pro Hac Vice*)
**MICHAEL D. LORE P.C.**
8 Greenway Plaza, Suite 1500
Houston, TX 77046
Telephone: (713) 782-5291
mlore@lorefirm.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Donald Allbaugh, on behalf of himself and all others similarly situated<br><br>    Plaintiffs,<br>v.<br><br>California Field Ironworkers Pension Trust; Board of Trustees of the California Field Ironworkers Pension Trust, Plan Administrator of the California Field Ironworkers Pension Trust,<br><br>    Defendants. | Case No.:  2:12-cv-00561-JAD-GWF<br><br><br>**AMENDED CLASS ACTION COMPLAINT** |

This is an action brought by Plaintiff on his own behalf and on behalf of other similarly

1

situated participants of the California Field Ironworkers Pension Trust under the Employee Retirement Income Security Act, as amended, ("ERISA"), 29 U.S.C. § 1001 *et. seq.* to recover pension benefits due, to enforce rights under and remedy violations of the terms of a pension plan and ERISA, for injunctive and other equitable relief to remedy statutory violations and breaches of fiduciary duty and to recover statutory penalties for Defendants' failure to comply with ERISA's disclosure requirements.

## JURISDICTION AND VENUE

1.      Jurisdiction of this matter is appropriate pursuant to 29 U.S.C. §1132(e), (f) and 28 U.S.C. §1331.

2.      Venue is proper pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391 as Defendants breached their obligations in the State of Nevada, Defendants may be found in the State of Nevada and the plan is administered, in part, in the State of Nevada.

## PARTIES

3.      Commencing in 1970 and continuing at various times through June 30, 2009, Plaintiff Donald Allbaugh ("Plaintiff" or "Mr. Allbaugh") worked for employers who had contracts with the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers ("Ironworkers"), that had signed pension agreements requiring the employer to make contributions to the California Field Ironworkers Pension Trust (the "Plan"). By virtue of his employment, Mr. Allbaugh became eligible for retirement benefits under the Plan and Mr. Allbaugh is and was at all relevant times a Participant in the Plan within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).

4.      Defendant, the Plan, is a multi-employer defined benefit employee pension benefit plan within the meaning of § 3(2) of ERISA, 29 U.S.C. § 1002(2) which was established and maintained for the purpose of providing retirement benefits for participants and their beneficiaries, including Plaintiff.

5.      Defendant Board of Trustees of the California Field Ironworkers Pension Trust (the "Plan Administrator" or "Board of Trustees") is the plan administrator for the Plan within the meaning of § 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A) and a "fiduciary" with respect to the Plan as defined in § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

**GENERAL ALLEGATIONS**

6.      As a result of his employment, Mr. Allbaugh obtained vested rights under the Plan and earned a nonforfeitable right to his accrued benefits under the Plan.

7.      The Plan provides that the normal retirement age is 65.

8.      Mr. Allbaugh reached age 65, the Plan's normal retirement age, in or around August 2007.

9.      Mr. Allbaugh worked past his normal retirement age. From in or around the time April 2007 through in or around June 2009, Mr. Allbaugh worked in the non-field positions of Safety Manager and Estimating.

10.     In or around August 2009, Mr. Allbaugh requested Defendants to provide information concerning his pension benefits to be effective October 1, 2009.

11.     The Plan did not pay Mr. Allbaugh his normal retirement benefits while he was working.

12.     The Plan provides that a participant's pension benefit under the Plan is based on "Past Service Credit" which is credit for service for any periods prior to June 1, 1958 and "Future Service Credit" which is credit for service earned on or after June 1, 1958.

13.     The Plan provides a "Basic Benefit" formula under which Past Service Credits and Future Service Credits are multiplied by a benefit value per pension credit in order to determine the benefit. The benefit value per pension credit is based on the year in which the pension credit is earned and the effective date of the pension.

14.    Prior to June 1, 1989, the Plan provided that an employee would receive a full year of "Future Service Credit" under the Plan in any year in which the Plan received employer contributions for 1,400 or more hours for that employee and that employee would receive partial years of "Future Service Credit" in any year in which the Plan received employer contributions for 350 or more hours.

15.    ERISA, 29 U.S.C. § 203(a), 29 U.S.C. § 1053(a) and the Internal Revenue Code ("IRC"), 26 U.S.C. § 411(a), provide that: "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age..."

16.    Regulations and guidance issued under IRC § 411(a) and ERISA § 203(a) further provide that if the Plan fails to pay a participant his accrued benefits at normal retirement age, the Plan must provide an actuarial increase to account for the delay in the participant's receipt of his accrued and nonforfeitable benefits.

17.    Prior to June 1, 1989, Article VI, Section 10 of the Plan provided:

 A pension benefit to which an Active Participant or Vested Participant is entitled under this Plan upon his attainment of Normal Retirement Age is nonforfeitable, subject, however, to retroactive amendment made within the limitations of Section 411(a)(3)(C) of the Internal Revenue Code and Section 302(c)(8) of ERISA. The benefits to which a surviving legal spouse is entitled shall likewise be nonforfeitable. Participants and beneficiaries shall be entitled to any of the other benefits of this Plan subject to all of the applicable terms and conditions. An Active Participant attains status as a Vested Participant [sic] when he has fulfilled the service requirements for receipt after Normal Retirement Age and retirement of a nonforfeitable pension.

18.    As of June 1, 1989, Mr. Allbaugh had obtained vested rights to his accrued benefits.

19.    Prior to June 1, 1989, there was no maximum limitation under the Plan on the age at which an employee could accrue "Future Service Credits" and a participant could work past normal retirement age and accrue benefits for all time worked.

20.     Under the Plan, prior to June 1, 1989, and consistent with ERISA and the IRC, a participant whose benefits did not commence at normal retirement age and whose benefits were not suspended in accordance with ERISA, the IRC and governing regulations, was entitled to receive, upon retirement, both the benefits earned after age 65 and the actuarial equivalent of his accrued benefits, whenever payment of such accrued benefits were delayed past normal retirement age.

21.     ERISA regulations promulgated by the Department of Labor ("DOL"), issued under the nonforfeitability requirements of ERISA § 203 and IRC § 411(a)(3)(C), provide:

> No payment shall be withheld by a plan pursuant to this section unless the plan notifies the employee by personal delivery or first class mail during the first calendar month or payroll period in which the plan withholds payments that his benefits are suspended. Such notification shall contain a description of the specific reasons why benefit payments are being suspended, a general description of the plan provisions relating to the suspension of payments, a copy of such provisions, and a statement to the effect that applicable Department of Labor regulations may be found in § 2530.203-3 of the Code of Federal Regulations. In addition, the suspension notification shall inform the employee of the plan's procedure for affording a review of the suspension of benefits.

29 CFR § 2530.203-3. In accordance with the regulations, the notice that must be provided in order to withhold any payments must contain: (1) the specific reasons for the suspension, (2) a description of the relevant plan provisions relating to the suspension of payments, (3) a copy of the Plan provisions (4) reference to the where the applicable ERISA regulations may be found and (5) a statement of the procedures for securing a review of the suspension.

22.     At all relevant times, the Plan also provided that the Plan Administrator shall give a participant notice of any suspension of benefits by personal delivery or first class mail during the first calendar month in which the benefits are withheld and that such notice must contain the specific reasons for the suspension, a description of the relevant plan provisions, reference to the applicable ERISA regulations and a statement of the procedures for securing a review of the suspension.

23.     At all relevant times, the Plan also provided that "[a] Participant shall be entitled to a review of a determination suspending his benefits by written request filed with the Trustees within 180 days of the notice of suspension of benefit."

24.     In violation of the terms of the Plan and ERISA, during the time that Mr. Allbaugh continued his employment past age 65, the Plan never provided him with the notices required under ERISA and the terms of the Plan that his retirement benefits were going to be or had been suspended.

25.     By letter dated July 9, 2011, Mr. Allbaugh requested:

a copy of my complete plan file, including, but not limited to all...correspondence to me and communications to me and any and all documents, correspondence or communications that were relevant to the decision to deny my claim and appeal including but not limited to any and all documents generated, considered or relied on in determination of my claim and appeal.

26.     The correspondence and communications that Mr. Allbaugh requested and that were produced by the Plan Administrator on or about August 20, 2011 did not contain any notice to Mr. Allbaugh that his benefits would be suspended.

27.     In or around December 2008, the Plan sent a notice to Mr. Allbaugh advising him that if he delayed starting his retirement until after age 65, his benefit would be actuarially increased as follows:

For those Participants applying for a Regular Pension

[I]if you chose to delay retiring (i.e., delay commencement of your pension benefits) until after age 65, your benefit will be actuarially increased.

28.     Upon information and belief, the December 2008 notice was sent to all active Plan participants.

29.     By an amendment purporting to be effective on or about June 1, 1989, the Plan was amended to provide that a participant who works more than 40 hours in covered employment following obtainment of normal retirement age would no longer receive the full

value of benefits accrued following attainment of normal retirement age. Rather, the Plan as amended effective on or about June 1, 1989, provides that a participant whose benefits were not suspended would receive only the greater of: 1) a pension benefit based on all of his years of pension credit or 2) the accrued benefit at normal retirement age actuarially increased for each month that benefits were not suspended beginning at normal retirement age, and ending on the earlier of the last day of the month immediately preceding the annuity starting date, or March 31 of the calendar year following the calendar year in which the participant attained age 70 ½.

30.    The Plan, as amended effective on or about June 1, 1989, provides that for participants who delay starting retirement benefits until after the participant's normal retirement age, the monthly benefit shall be the greater of:

> (1) The total years of Pension Credit accrued at his Annuity Starting Date multiplied by the applicable amount in Section 3 of Article III; or
> (2) The accrued benefit at Normal Retirement Age actuarially increased for each complete calendar month for which benefits were not suspended during the period beginning at Normal Retirement Age, and ending on the earlier of the last day of the month immediately preceding the Annuity Starting Date, or March 31 of the calendar year following the calendar year in which the Participant attained age 70 ½.
> ***
> The actuarial increase described in paragraph (2) shall be 1% per month for the first 60 months after Normal Retirement Age and 1.5% per month for each month thereafter.

31.    ERISA § 204(g), 29 U.S.C. § 1054(g), provides, *inter alia*: "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan."

32.    The June 1, 1989 amendment eliminating the right of participants for whom benefits have not been suspended to receive the full value of benefits accrued past normal retirement age *in addition to* an actuarial adjustment to account for the delay in receipt of benefits following the attainment of normal retirement age, violates ERISA § 204(g).

33.    ERISA § 204(h), 29 U.S.C § 1054(h), in effect as of June 1, 1989, provided that a pension plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date…" to each plan participant.

34.    In violation of ERISA § 204(h), 29 U.S.C. § 1054(h), no notice of the significant reduction in future benefit accruals effectuated by the June 1, 1989 amendment was provided.

35.    In or around September, 2009 (Mr. Allbaugh's "delayed retirement date"), Mr. Allbaugh chose to retire when he was age 67 years and 1 month old.

36.    Pursuant to ERISA and the terms of the Plan, Defendants were required to provide to Mr. Allbaugh both his actuarial increase for the delay in the commencement of his pension benefits and the pension credit he earned for working from his normal retirement age through his delayed retirement date.

37.    On September 23, 2009, the Plan provided Mr. Allbaugh with a summary of his pension calculation.

38.    Even though Defendants had advised Mr. Allbaugh that his pension would be actuarially increased if he retired after age 65, and even though Mr. Allbaugh did in fact delay retiring until after age 65 and chose to retire at age 67, Defendants failed to provide Mr. Allbaugh with the actuarial increase he was entitled to receive as a result of delaying his retirement.

39.    Instead, Defendants applied the unlawful amendment to Mr. Allbaugh and informed him that they would only provide him with the greater of the benefit he earned between normal retirement age and his delayed retirement date or the actuarial equivalent of the benefits he had accrued as of age 65.

40.     By emails and letters dated December 14, 2009, December 28, 2009, January 25, 2010 and February 10, 2010, Mr. Allbaugh appealed the determination of his benefits, including, *inter alia*, the failure to provide an actuarial increase to account for the delay in his receipt of benefits after attainment of age 65.

41.     By letter dated March 12, 2010, the Defendant Plan Administrator denied Mr. Allbaugh's appeal.

42.     In addition to violating ERISA and the terms of the Plan by failing to provide both an actuarial increase for the delay in the commencement of his pension benefits and the pension credit he earned for working from his normal retirement age through his delayed retirement, the Plan failed to calculate the actuarial increase due to Mr. Allbaugh for the delay in receipt of benefits after age 65 and failed to calculate and pay Mr. Allbaugh the greater of the benefits he had accrued by working past age 65 and  the actuarial increase due for the delay in his receipt of benefits.

43.     The Plan incorrectly advised Mr. Allbaugh that it had determined that the benefit he had accrued following normal retirement age was higher than the actuarial increase when it had not calculated the benefit actuarially increased following normal retirement age and when the benefit actuarially increased following normal retirement age was higher than the benefits Mr. Allbaugh accrued following normal retirement age

44.     Even though the actuarial increase due to Mr. Allbaugh was greater than the benefits he had accrued by working past age 65, Defendants refused to provide Mr. Allbaugh with his actuarial increase.

45.     In violation of the terms of the Plan and ERISA, the Defendant Plan also failed to provide Mr. Allbaugh with an actuarial increase in his benefits to account for the months, following his attainment of age 65, that he was not working in covered employment and not receiving retirement benefits.

46.     Mr. Allbaugh has exhausted his administrative remedies.

47.     The Defendant Plan Administrator is a board of trustees composed of equal numbers of individuals who are appointed by employers who are required to make contributions to the Plan and individuals who are appointed by the local unions and by the District Council of Ironworkers for the State of California.

48.     Active employees elect the union officials who in turn appoint the union trustees for the Plan.

49.     The Ironworkers and its local unions and the union representatives on the Board of Trustees represent the interests of active employees during the collective bargaining process. Retired employees have no vote in local union elections and do not get to elect any of the local union officials nor the trustees that serve on the Board of Trustees.

50.     Employer trustees have a conflict of interest in that they and the employers who they represent have a financial interest in the Plan because they are required to contribute the money used to fund the benefits under the collective bargaining agreements with the Ironworkers and because they may be liable under ERISA's withdrawal liability provisions if they withdraw from the Plan and the Plan is underfunded.

51.     The union trustees must answer to the active employees who elect them. They are engaged in collective bargaining with employers including with the employer trustees. The union trustees have a conflict of interest in favor of active employees who elect them to office and on whose behalf they bargain with employers.

52.     This type of plan, that purports to represent retirees but provides no retiree representation on its Board of Trustees, has a structural conflict of interest.

53.     By letter dated September 28, 2009, Mr. Allbaugh made a written request to the Plan Administrator for the tables used to calculate his actuarial factors.  He did not receive any such tables until December 15, 2009.

54.     By email dated January 8, 2010, Mr. Allbaugh made a written request for the trust agreements with all amendments thereto and requested that he be allowed to review the documents in the offices of the local union, a plan sponsor.  The Defendant Plan refused to permit Plaintiff to examine the documents, advising Mr. Allbaugh on January 11, 2010, that "they do not address benefit issues" and that if Mr. Allbaugh thought he needed them, the Plan would provide them "at a later date."  The Plan did not provide the Trust Agreements to Mr. Allbaugh until on or about April 5, 2010.

## CLASS ALLEGATIONS

55.     In addition to Plaintiff's individual claims, this action is commenced pursuant to Federal Rule of Civil Procedure 23 as a class action on behalf of the following class and all appropriate subclasses:

> Class 1: All participants in the Plan who worked past normal retirement age or who returned to work after commencement of benefits under the Plan (and their eligible beneficiaries) whose benefits are being suspended, were suspended or would, upon retirement, be suspended and who did not receive by personal delivery or first class mail in the first calendar month or payroll period for which benefits were withheld, a notice of suspension of benefits compliant with ERISA regulations and/or the Plan.
> Subclass A: All Class 1 Members (and their eligible beneficiaries) who had accrued benefits under the Plan prior to the adoption of the Plan amendment purporting to be effective as of June 1, 1989 and who did not receive or are not scheduled to receive both an actuarial adjustment to their benefits to compensate them for the delay in receipt of benefits after attainment of normal retirement age plus all of the retirement benefits each participant accrued following attainment of normal retirement age.

56.     Upon information and belief, the Class is so numerous that joinder of all persons in the class is impracticable.  The Plan's publicly available Form 5500 (Annual Return/Report of Employee Benefit Plan), for the Plan year ending March 31, 2010, states that there were more than 20,000 Plan participants. Upon information and belief, hundreds of Plan participants continue to work past normal retirement age every year.

57.    Upon information and belief, Defendants have systematically failed and are systematically failing to provide notices of suspensions of benefits as required by ERISA and the terms of the Plan despite the requirement under the Plan and ERISA to do so.

58.    There are questions of law and fact common to the members of the Class and subclass including whether declaratory and injunctive and other equitable relief is appropriate and whether Defendants have violated ERISA and the terms of the Plan including, *inter alia:* whether the Plan suspended class members' retirement benefits and failed as a matter of customary practice to provide a notice of suspension of benefits for all employees who worked past normal retirement age in violation of the terms of the Plan and Section 203 of ERISA and the applicable regulations; whether Defendants retroactively reduced accrued benefits and failed to give notice of a significant reduction in the rate of benefit accrual in violation of Section 204(g) and (h) of ERISA, whether Defendants failed to calculate and pay the greater of the normal retirement benefit actuarially increased for the delay in the commencement of his pension benefits and the pension credit earned for working from normal retirement age through delayed retirement to participants whose benefits were not suspended and whether Defendants breached their fiduciary duties to Class members.

59.    The claims of Plaintiff are typical of the claims of the Class in that Plaintiff and all Class members have the same rights under the plan documents and under ERISA and challenge the same conduct and because resolution of the claims will provide common answers to all members of the Class in that all Class members suffered the same actual harm caused by the same Plan and ERISA violations complained of herein.

60.    Plaintiff will fairly and adequately represent the interests of the Class members. He has diligently pursued his claim and appeal and has engaged the undersigned experienced ERISA and class action counsel.

61.    The prosecution of separate proceedings by the individual members of the Class would create a risk of inconsistent or varying adjudications which would be dispositive of the interests of other members not parties to the litigation or substantially impair or impede their ability to protect their interests.

62.    Defendants have acted or refused to act on grounds generally applicable to the Class as a whole by engaging in the same violations of ERISA with respect to the Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole.

63.    Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members. A class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy including, *inter alia*, because the Class members have suffered from the same violations of ERISA and the terms of the Plan, the sheer size of the Class and the fact that they are dispersed throughout California, Nevada and Arizona and beyond would make such proceedings impracticable, the  relatively small amounts of monetary relief involved in some cases present a significant and recurring obstacle to the ability of Class members to retain counsel to prosecute these ERISA violations in separate legal proceedings yet likely have caused and will continue in the future to cause loss of valuable pension rights unless remedied through injunctive and other appropriate equitable relief.

**COUNT ONE**
**(TO REDRESS VIOLATIONS OF THE PLAN AND ERISA'S SUSPENSION OF BENEFITS AND FORFEITURE PROVISIONS PURSUANT TO SECTIONS 502(a)(1)(B) AND (a)(3))**

64.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

65.     ERISA § 203(a), 29 U.S.C. § 1053(a) provides in relevant part that "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age..."

66.     ERISA § 3(24), 29 U.S.C. § 1002(24) defines "accrued benefit" as "the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age ..."

67.     ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) provides in pertinent part: "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age ... the employee's accrued benefit ... shall be the actuarial equivalent of such benefit ..."

68.     Pursuant to ERISA § 203(a)(3)(B), 29 U.S.C. § 1053(a)(3)(B), and applicable regulations, an unlawful forfeiture of benefits occurs if a plan suspends payment of benefits after normal retirement age unless the plan provides the detailed notice prescribed by the regulations by personal delivery or first class mail in the first calendar month or payroll period in which the benefits are suspended.

69.     The ERISA regulation implementing ERISA § 203(a)(3)(B), 29 U.S.C. § 1053(a)(3)(B), provides in pertinent part:

> Notification.  No payment shall be withheld by a plan pursuant to this section unless the plan notifies the employee by personal delivery or first class mail during the first calendar month or payroll period in which the plan withholds payments that his benefits are suspended. Such notification shall contain a description of the specific reasons why benefit payments are being suspended, a general description of the plan provisions relating to the suspension of payments, a copy of such provisions, and a statement to the effect that applicable Department of Labor regulations may be found in § 2530.203-3 of the Code of Federal Regulations. In addition, the suspension notification shall inform the employee of the plan's procedure for affording a review of the suspension of benefits.

29 C.F.R. § 2530.203-3(b)(4).

70.    By the acts and omissions complained of above Defendants violated ERISA applicable regulations, and the terms of the Plan.

71.    As a proximate result of Defendants' unlawful acts and omissions, Mr. Allbaugh and Class members have been harmed and, *inter alia*, have been deprived of vested and accrued benefits due or to become due and of statutory rights protected by ERISA.

72.    Section 502 (a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that:

A civil action may be brought -

(1) by a participant or beneficiary - . . .

***

(B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

73.    Section 502(a)(3) of ERISA provides that a civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

74.    Plaintiff and Class members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order declaring that Defendants violated ERISA §§ 203 and 204(c) and the regulations thereunder, enjoining Defendants from suspending benefits for any calendar month or payroll period prior to furnishing the notices required by ERISA and the terms of the Plan, making Plaintiff and class members whole for the unlawful suspension of their pension benefits by requiring payment of the actuarial equivalent of such benefits  plus the additional benefits accrued to each Class member while working during any period for which benefits were unlawfully withheld, enjoining Defendants from violating ERISA and the terms of the Plan and such other and further relief as to the Court is just and proper together with pre-judgment interest, attorneys' fees and costs.

**COUNT TWO**
**(TO REDRESS VIOLATION OF ERISA'S ACCRUAL OF BENEFITS**
**REQUIREMENTS PURSUANT TO SECTIONS 502(a)(1)(B) AND (a)(3))**

75.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

76.    Section 204(g) of ERISA, 29 U.S.C. § 1054(g), provides in part:

(g) Decrease of accrued benefits through amendment of plan

(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.
(2) For purposes of paragraph (1), a plan amendment which has the effect of–
(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
(B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. ...

77.    Section 204(h) of ERISA, 29 U.S.C. § 1054(h), as in effect on June 1, 1989 provided in relevant part:

 (h) Notice of Significant Reductions in Benefit Accruals

**(1)** A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to—

**(A)** each participant in the plan,

**(B)** each beneficiary who is an alternate payee (within the meaning of section 1056(d)(3)(K) of this title) under an applicable qualified domestic relations order (within the meaning of section 1056(d)(3)(B)(i) of this title)…

78.    By the acts and omissions complained of above, including, *inter alia,* by amending the Plan to reduce accrued benefits, by failing to give notice of a significant reduction in the rate

of future benefit accruals, by failing to disclose Plan amendments and by calculating and paying benefits and determining the right to benefits based on unlawful and/or undisclosed Plan amendments, Defendants violated ERISA, including, *inter alia* ERISA §§ 204(g) and (h) and applicable regulations.

79.    As a proximate result of Defendants' violations of ERISA, Mr. Allbaugh and Class members have been harmed and, *inter alia*, have been deprived of vested and accrued benefits due or to become due.

80.    Plaintiff and Class members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order declaring that Defendants violated ERISA § 204 and applicable regulations, enjoining Defendants from failing to provide both an actuarial increase for working past normal retirement age plus all additional benefits accrued to each Class member after normal retirement age and to immediately pay all benefits wrongfully withheld, surcharging the fiduciaries, reforming the Plan, *inter alia*, to eliminate the provisions of the Plan amendment purporting to permit payment of only the greater of an actuarial adjustment for delayed normal retirement benefits or the benefits accrued after normal retirement age and declaring that such amendment never became effective and enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed, such other and further relief as to the Court is just and proper, together with pre-judgment interest, attorneys' fees and costs.

## COUNT THREE
### (TO REDRESS DEFENDANTS' VIOLATIONS OF ERISA FIDUCIARY DUTY REQUIREMENTS)

81.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

82.    ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1) provides in relevant part:

(1) Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge

his duties with respect to a plan solely in the interest of the participants and beneficiaries and–

(A)  for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

***

(D) in accordance with the documents and instruments governing the plan insofar as  such documents and instruments are consistent with the provisions of this title and title IV.

83.    Defendants have a fiduciary responsibility to provide Plaintiff and Class members with truthful and adequate disclosures of the consequences of continuing to work past normal retirement age and to administer the plan in accordance with ERISA and the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

84.    By the acts and omissions complained of above, including, *inter alia*, promising participants that they would receive an actuarial increase in their normal retirement benefits if they chose to delay retiring until after age 65, by failing to give notice to participants that the plan was amended to provide only the greater of the benefits accrued by working past normal retirement age or the actuarial equivalent of their normal retirement benefits, by failing to provide notice of benefit suspensions, by applying amendments to retroactively decrease accrued benefits and by depriving Plaintiff and Class members of rights protected by ERISA and the terms of the Plan, Defendants breached their fiduciary duties to Plaintiff and Class members.

85.    As a proximate result of Defendants' breaches of fiduciary duty, Plaintiff and Class members have been harmed and, *inter alia*, been deprived of rights protected by the terms of the Plan and ERISA.

86.    Plaintiff and Class members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order declaring that Defendants breached their

fiduciary duties and violated ERISA Section 404 of ERISA and applicable regulations, enjoining Defendants from failing to provide both an actuarial increase for working past normal retirement age plus all additional benefits accrued to each Class member after normal retirement age surcharging the fiduciaries, reforming the Plan, *inter alia*, to eliminate the provisions of the plan amendment purporting to permit payment of only the greater of an actuarial adjustment for delayed normal retirement benefits or the benefits accrued after normal retirement age and declaring that such amendment never became effective, such other and further relief as to the Court is just and proper, together with pre-judgment interest, attorneys' fees and costs.

## COUNT FOUR
### (TO REDRESS DEFENDANTS' VIOLATION OF THE TERMS OF THE PLAN PURSUANT TO ERISA SECTIONS 502(a)(1)(B))

87.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

88.    As set forth above, the Plan fails to  calculate Mr. Allbaugh and Class members' accrued benefits actuarially increased for each month after normal retirement age to their delayed retirement dates and pay the greater of the accrued benefits actuarially increased for each month after normal retirement age or the benefits accrued following normal retirement age.

89.    Mr. Allbaugh's benefits at normal retirement age actuarially increased for each month after normal retirement age to his delayed retirement date were greater than the total years of Pension Credit accrued at the Annuity Starting Date.

90.    Defendants failed to calculate and provide Mr. Allbaugh and Class members with the greater of the benefits at normal retirement age actuarially increased for each month after normal retirement age to their delayed retirement dates or their total years of Pension Credit accrued at the Annuity Starting Date.

91.    As set forth above, Defendants failed to provide Mr. Allbaugh an actuarial increase for months following his attainment of age 65 that he was not working in covered employment and not receiving retirement benefits.

92.    As a proximate result of Defendants' violations of the terms of the Plan, Plaintiff and Class 1 Members were harmed and deprived of benefits due under the terms of the Plan.

93.    As a result of Defendants' violations of the terms of the Plan, Plaintiff and Class members are entitled to an order declaring that Defendants violated the terms of the Plan, requiring Defendants to calculate Plaintiff's and Class members' actuarial adjustment to their benefits for the delay in receiving benefits from normal retirement age through their delayed retirement age and to pay  the greater of their normal retirement benefits actuarially adjusted to account for the delay in receiving benefits through their delayed retirement age or the all of the benefits accrued at their Annuity Starting Date and all other benefits due under the terms of the Plan retroactively with prejudgment interest, attorneys' fees and costs.

## COUNT FIVE
### (FOR VIOLATIONS OF ERISA'S DISCLOSURE REQUIREMENTS)

94.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

95.    Section 104 (b)(2) of ERISA, 29 U.S.C. §1024(b)(2), provides in pertinent part: The administrator shall make copies of the latest updated summary plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations).

96.    Section 104(b)(4) of ERISA, 29 U.S.C. §1024(b)(4), provides in pertinent part:

 The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, and terminal report, the bargaining agreement, trust

agreement, contract, or other instruments under which the plan is established or operated.

97.     Section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B), provides in pertinent part:

Any administrator. . .(B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to [$100] a day from the date of such failure or refusal and the court may in its discretion order such other relief as it deems proper… For purposes of this paragraph, . . .each violation described in subparagraph (B) with respect to a single participant or beneficiary, shall be treated as a separate violation.

98.     Pursuant to the Debt Collection Improvement Act of 1996 (62 Fed. Reg. 40696) the $100 limit referred to in Section 502(c) of ERISA was increased to $110. 29 C.F.R. § 2575.502(c)(1) therefore states in pertinent part that: "The maximum amount of the civil monetary penalty established by Section 502(c)(1) of...ERISA [has been] increased from $100 a day to $110 a day."

99.     As set forth above, despite Mr. Allbaugh's requests and a legal obligation to furnish documents and to allow Mr. Allbaugh to examine Plan documents at the offices of the Union, Defendants actively discouraged Plaintiff from seeking and examining documents to which he was entitled under ERISA, delayed in producing documents and denied Plaintiff access to documents which the Defendants were required to furnish and which Plaintiff was entitled to review and receive under § 104 of ERISA, 29 U.S.C. § 1024 and the regulations thereunder. Upon information and belief, Defendant Plan Administrator's failure to timely furnish documents did not result from matters beyond its control.

100.    As a result of Defendants' acts and omissions set forth above Plaintiff has been harmed and his right to benefits and to pursue his claims for benefits was chilled, delayed and thwarted.

101.    Defendant Plan Administrator should be enjoined to timely furnish and permit in-person examination of Plan documents and should be assessed a penalty of $110 per day for each separate violation for every day following 30 days after Plaintiff's first document request that Defendants failed to produce or permit inspection of the requested documents through the date each requested document was furnished to Plaintiff, together with costs and attorneys' fees.

WHEREFORE, Plaintiff requests that Judgment be entered in his favor against Defendants as follows:

A.    Declaring that Defendants violated the terms of the Plan;

B.    Declaring the Defendants violated ERISA §§ 104, 203, 204 and 404 and regulations thereunder;

C.    Enjoining Defendants from violating the terms of the Plan;

D.    Enjoining Defendants from violating ERISA §§ 104, 203, 204 and 404 and regulations thereunder;

E.    Reforming the Plan, *inter alia*, to eliminate the provisions of the Plan amendment purporting to permit payment of only the greater of an actuarial adjustment for delayed normal retirement benefits or the benefits accrued after normal retirement age and declaring that such amendment never became effective and enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed;

F.    Surcharging the fiduciaries for the harm caused by their breaches of fiduciary duties so as to make Plaintiff and Class members whole;

G.    Enjoining Defendants to provide Plaintiff and Class members with an actuarial adjustment to their benefits for the delay in receiving benefits from normal retirement age through their delayed retirement date together with all benefits accrued between normal retirement age and their delayed retirement date;

H.    Enjoining Defendants to recalculate and pay Plaintiff and Class Members' benefits in accordance with the terms of the Plan;

I.    Awarding Plaintiff and Class members all benefits wrongfully withheld;

J.    Awarding Plaintiff $110 per day for each day past 30 that Defendants delayed in producing Plan documents until Defendants complied with Plaintiff's request for documents and information to which Plaintiff is entitled under ERISA;

K.    Awarding Plaintiff and Class members costs of suit;

L.    Awarding Plaintiff and Class members pre-judgment and post-judgment interest;

M.    Awarding Plaintiff and Class members all attorneys' fees under ERISA §502(g) and/or the common fund theory, and

N.    Awarding such other and further relief the Court deems just and proper.

DATED this 27th day of May, 2014.

**MARTIN & BONNETT, P.L.L.C.**

By: _/s/Susan Martin_____
SUSAN MARTIN (*Pro Hac Vice*)
JENNIFER KROLL (*Pro Hac Vice*)
1850 N. Central Ave. Suite 2010
Phoenix, AZ 85004
(602) 240-6900

**KATHLEEN J. ENGLAND**
**ENGLAND LAW OFFICE**
630 South Third Street
Las Vegas, NV 89101
Telephone: (702) 385-3300
Facsimile: (702) 385-3823

MICHAEL D. LORE (*Pro Hac Vice*)

MICAHEL D. LORE P.C.
8 Greenway Plaza, Suite 1500
Houston, TX 77046

Attorneys for Plaintiff

1

## CERTIFICATE OF SERVICE

2

3      I hereby certify that on May 27, 2014, I electronically transmitted the attached document
to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of
4      Electronic Filing to the following CM/ECF registrants:

5    Joseph P. Hardy
     GORDON & REES LLP
6    3770 Howard Hughes Parkway, Suite 100
     Las Vegas, Nevada 89169

7
     J. Quitman Stephens
8    GORDON & REES LLP
     2100 Ross Avenue, Suite 2800
9    Dallas, Texas 75201

10   Michelle L. Steinhardt
     GORDON & REES LLP
11   633 W. Fifth Street, 2nd Floor
     Los Angeles, CA 90071
12   Attorneys for Defendants

13   /s/ T. Mahabir

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28