# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DONALD ALLBAUGH, on behalf of himself and all others similarly situated,

Plaintiff,

v.

CALIFORNIA FIELD IRONWORKERS PENSION TRUST et. al.,

Defendants.

Case No. 2:12-cv-00561-JAD-GWF

**Order re: Motion to Certify Class [Doc. 57]**

This is a proposed ERISA class action for alleged miscalculation and failed payment of pension benefits. Plaintiff Donald Allbaugh claims he and similarly situated retirees are entitled to greater pension benefits than they are currently receiving to account for deferred benefits accumulated while they continued to work after reaching retirement age. Allbaugh moves to certify two proposed classes. I find that plaintiff has demonstrated that class treatment is appropriate for the claims asserted on behalf of Class 2 only, and I grant the motion in part and certify a class consisting of all participants (and their eligible beneficiaries) who had accrued benefits under the Plan prior to the adoption of the Plan amendment purporting to be effective as of June 1, 1989, and who did not receive or are not scheduled to receive both an actuarial adjustment to their benefits to compensate them for the delay in receipt of benefits after attainment of normal retirement age plus all of the retirement benefits each participant accrued following attainment of normal retirement age, for the prosecution of claims II and III.

## Background

From 1970, and continuing at various time through June 30, 2009, plaintiff Donald Allbaugh worked for employers who had contracts with the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers. Those contracts required the employers to make contributions on behalf of employed ironworkers to Defendant California Field Ironworkers Pension

Trust (the "Plan"), a multiemployer, defined-benefit employee pension benefit plan. As a result of his employment and the required employer contributions, plaintiff obtained a vested right to pension benefit payments upon turning sixty-five (normal retirement age) in August 2007. However, rather than retiring after reaching normal retirement age, plaintiff continued working and delayed application for his pension benefits until October 2009 (plaintiff's "delayed retirement date").

Under the Plan, participants who have at least five years of vesting credit are entitled to normal retirement benefits upon reaching the normal retirement age. For those working past normal retirement age, the version of the Plan in effect at plaintiff's delayed retirement date provided for payment of the greater of the pension credit earned during the continued employment or an actuarial increase to future payments to account for the benefits that would have been paid had plaintiff retired at normal retirement age (deferred benefits). When plaintiff requested his pension benefits, the Plan's administrator calculated that the increased pension credit due to plaintiff's extra years of service was a greater increase to his total benefit amount than the actuarial increase would have been. Consequently, the Plan began paying pension benefits, which included the pension credit plaintiff earned in his extra two years service.

Plaintiff, however, disagreed with the determination, arguing that under the terms of the Plan and the Employee Retirement Income Security Act ("ERISA") he is entitled to both the pension credits earned and an actuarial increase accounting for his deferred benefits. Plaintiff challenged the Plan's determinations of his benefits through the Plan's own internal review procedures. The Plan Administrator upheld the determination and plaintiff then brought this suit. Plaintiff asserts that the Plan has likewise deprived all similarly situated retirees of benefits to which they are entitled under the Plan and ERISA, and he now seeks to certify two classes:

> Class 1: All participants in the Plan who worked past normal retirement age or who returned to work after commencement of benefits under the Plan (and their eligible beneficiaries) whose benefits are being suspended, were suspended or would, upon retirement, be suspended and who did not receive by personal delivery or first class mail in the first calendar month or payroll period for which benefits were withheld, a notice of suspension of benefits complaint with ERISA regulations and/or the Plan.

      Class 2: All participants[1] (and their eligible beneficiaries) who had accrued benefits under the Plan prior to the adoption of the Plan amendment purporting to be effective as of June 1, 1989 and who did not receive or are not scheduled to receive both an actuarial adjustment to their benefits to compensate them for the delay in receipt of benefits after attainment of normal retirement age plus all of the retirement benefits each participant accrued following attainment of normal retirement age.

Class 1 members assert claims in Counts I (violations of the Plan and ERISA's suspension-of-benefits and forfeiture provisions), III (violations of ERISA fiduciary duties), and IV (violation of the terms of the Plan) of the First Amended Complaint; and Class 2 seeks to pursue Counts II (violation of ERISA's accrual-of-benefits requirements) and III (violations of ERISA fiduciary duties).[2] Having considered the papers and heard oral argument, I find that plaintiff has satisfied the class-certification requirements for Class 2 only; the absence of sufficient proof of commonality and typicality under Counts I, IV, and the portions of Count III that pertain to Class 1 prevents Class 1's certification.

## Discussion

**A.**  **Legal Standard for Class Certification**

  The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[3] To qualify for this exception, "[a] party seeking class certification must affirmatively demonstrate his compliance with [Fed. R. Civ. P. 23]."[4] Rule 23(a) requires a plaintiff to meet four prerequisites for certification: (1) numerosity; (2) commonality; (3)

---

[1] Originally, Class 2 was a subclass of Class 1. The text of the proposed class originally read "[a]ll members of Class 1." However, at the hearing on the motion for certification, plaintiff's counsel sought to change the proposed subclass to an independent class because certain plan participants would potentially be affected by the alleged unlawful amendment (Class 2), but unaffected by defective notice of suspension of benefits after normal retirement age (Class 1).

[2] Doc. 72.

[3] *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979).

[4] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

typicality; and (4) adequacy of representation.[5] Although a certification determination under Rule 23 does not involve a direct analysis of the merits of a plaintiff's underlying claims, "Rule 23 does not set forth a mere pleading standard."[6] Rather, a plaintiff must prove "that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation," in order for a court to grant certification.[7] Accordingly, the court may certify a class only if it is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a)" have been met.[8] To that end, the plaintiff must provide "enough evidence, by affidavits, documents, or testimony," to enable the court to determine that certification is appropriate.[9] As this determination "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," the court may be required "to probe behind the pleadings before coming to rest on the certification question."[10] Consequently, the "rigorous analysis" required under Rule 23 will frequently "entail overlap with the merits of the plaintiff's claim."[11]

In addition to meeting the requirements of Rule 23(a), a plaintiff must also satisfy one of the three subsections of Rule 23(b) before obtaining an order of certification.[12] Rule 23(b)(1) requires the court to find that prosecuting separate actions would entail a risk of inconsistent judgments or establish dispositive facts for others prosecuting the same action against the same defendant.[13] Rule 23(b)(2) requires the court to find that "the party opposing the class has acted or refused to act on

---

[5] Fed. R. Civ. P. 23(a); *see also Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

[6] *Id.* at 2551, 2552 n. 6.

[7] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotation omitted).

[8] *Falcon*, 457 U.S. at 161.

[9] *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

[10] *Wal-Mart*, 131 S. Ct. at 2551 (internal quotations omitted).

[11] *Id.*

[12] *Comcast*, 133 S. Ct. at 1432.

[13] *See* Fed. R. Civ. P. 23(b)(1).

grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[14]  Rule 23(b)(3) requires the court to find (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[15]  The same analytical principles applicable to Rule 23(a) govern Rule 23(b).[16]

**B.     Plaintiff Has Satisfied Rule 23(a) for Class 2 but not Class 1.**

*1.     Class 1*

To establish numerosity, a plaintiff must demonstrate that "the class is so numerous that joinder of all members is impracticable."[17]  Plaintiff has established that the class of potential plaintiffs for Count 1 likely exceed 100.  Plaintiff points to the benefits files of at least 100 people[18] working past normal retirement age (provided during discovery) and notes that these files do not contain notices or did not contain regulation-compliant notices.  The conditions of these files is established by the sworn declaration of plaintiff's attorney, Jennifer Kroll, who reviewed the benefit files and attests to their contents.  The Plan argues that Ms. Kroll lacks the personal knowledge to testify to the number of individuals belonging to Class 1.  But, as I noted when denying the Plan's motion to strike, Ms. Kroll has personal knowledge of the contents of the documents produced by the Plan in discovery, and I do not find it necessary or judicially economical to force plaintiff to provide all 7,700 pages of discovery documents to demonstrate the absence of notices within those documents; I accept her attestation as an officer of the court.  And, although Ms. Kroll is an attorney

---

[14] Fed. R. Civ. P. 23(b)(2).

[15] Fed. R. Civ. P. 23(b)(3).

[16] *Comcast*, 133 S. Ct. at 1432.

[17] Fed. R. Civ. P. 23(a)(1).

[18] At the hearing, plaintiff's counsel noted that the Plan had only provided a portion of the benefit files due to a data migration issue.

1 not subject to cross-examination, the Plan certainly could have argued that her conclusions were
2 wrong or that, based on its own counsel's review of the benefit files, its counsel concluded that
3 significantly fewer individuals met the definition of Class 1. As the Plan did not offer such a
4 rebuttal, I find that Class 1 is sufficiently numerous to satisfy FRCP 23(a)(1).

But numerosity alone does not justify class certification, and although Class 1 surmounts the numerosity hurdle, it falters at commonality and typicality. To establish commonality, a plaintiff must show that "there are questions of law and fact common to the class"[19] by demonstrating that the members of the class "have suffered the same injury," not merely "that they have all suffered a violation of the same provision of law."[20]

### *a.    Count 1*

With respect to Count I, plaintiff's allegations bar any finding of common injury to the putative class. In Count I, plaintiff asserts that he and the class were deprived of retirement benefits because they did not receive notice informing them that their benefits would be suspended if they continued in employment after reaching retirement age. Although, under ERISA, an employer may properly suspend benefit payments for employees working past normal retirement age if employed "in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when [ ] benefits commenced,"[21] plaintiff argues that compliance with a Department of Labor notification provision is a condition precedent to the operation of the exception.[22] He concludes that, because members of the class were either not provided with the notice or provided with notice insufficient to meet the requirements of the regulation, the exception was never triggered and the

---

[19] Fed. R. Civ. P. 23(a)(2).

[20] *Wal-Mart*, 131 S. Ct. at 2550 (internal quotations omitted).

[21] 29 U.S.C. § 1053(a)(3)(B).

[22] 29 C.F.R. § 2530.203-3(b)(4). The regulation provides that "no payment shall be withheld . . . unless the plan notifies the employee by personal delivery or first class mail during the first calendar month or payroll period in which the plan withholds payments that his benefits are suspended." The regulation further requires the notice to state the specific reason why benefits are suspended, provide the relevant plan provisions under which benefits are suspended, and inform the employee of both where the regulations may be found and how the employee can obtain review of the plan's determinations.

Plan was not entitled to withhold members' benefits.

However, as I explained when granting plaintiff's motion to amend,[23] his construction of the DOL regulation is flawed.  The DOL has clarified that its notice regulation "affects only the plan's right to *begin* withholding payment—it does not affect the plan's entitlement to ultimately withhold or recoup all payments which it is entitled to withhold under § 2530.203-3."[24]  Consequently, lack of notice does not give rise to a substantive claim for withheld benefits under ERISA because the employer is ultimately entitled to withhold those benefits under section 203(a)(3)(B).[25]  And although "a retiree will not be deemed to be employed in section 203(a)(3)(B) service until the plan has complied with the notice requirements," this is the "solely for purposes of a plan's entitlement to *commence* the withholding of benefits."[26]  Indeed, an employer can still recoup any payments it was entitled to withhold under § 203(a)(3)(B) even if notice is delayed.[27]  So the damages arising from non-compliance with the notice regulation arise from the injuries associated with the improper *commencement* of benefit payments only, not the withheld benefits themselves.

Typicality, which tends to merge with commonality,[28] is demonstrated by a showing that the named plaintiff's claims arise from "the same event or course of conduct giving rise to the claims of other class members and based on the same legal theory."[29]  Because failed notice only gives rise to consequential or equitable damages associated with improperly commencing withholding payments,

---

[23] Doc. 70.

[24] Rules and Regulations for Minimum Standards for Employee Benefit Plans; Suspension of Benefit Rules, 46 Fed. Reg. 8894-01, 8901 (Jan. 17, 1981) (to be codified at 29 C.F.R. § 2530.203-3) (emphasis added).

[25] *See Canada v. Am. Airlines, Inc. Pilot Retirement Ben. Program*, No. 3:09-0127, 2010 WL 4877280 at *15-16 (M.D. Tenn. Aug. 10, 2010).

[26] 46 Fed. Reg. at 8901 (emphasis added).

[27] *Id.*

[28] *Gen. Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

[29] *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 241 (D. Ariz. 2001).

each class member's damages would be unique to that individual. Thus, the class members cannot have suffered the same or similar injuries. The allegations in plaintiff's Amended Class Action Complaint[30] do not support a finding of commonality or typicality for the proponents of Count 1.

### b. Count IV

Plaintiff has also not demonstrated commonality or typicality for Class 1's maintenance of Count IV. Count IV's allegations are vague. Plaintiff alleges that the Plan miscalculated the amount of benefits due to him under the Plan's formula and that this miscalculation was systematic and thus affected all members of Class 1. But plaintiff offers no detail as to what the miscalculation was or was based upon, what the correct calculation should have been under the Plan's formula, or why we can conclude that the miscalculation was systematic such that the court can fairly test the claim's theory for commonality and typicality. Plaintiff's class-certification evidence offers no factual detail about how the lack of proper notice of suspension of benefits—which defines Class 1—relates at all to the alleged miscalculation. As plaintiff has not demonstrated that his miscalculation claim is common to and typical of the claims of the Class 1 members, certification is denied as to Count IV.

### c. Count III

Finally, plaintiff has also not established commonality or typicality for Class 1's claims in Count III. In Count III, plaintiff asserts that the Plan breached its fiduciary duties to him and Class 1 by sending a general notice to Plan participants that those participants who worked past normal retirement age would receive an actuarial increase to future benefits to compensate for the benefits deferred during continued employment. Plaintiff alleges that because he and other class members were ultimately awarded only pension credit to compensate for continued employment, the notice provided false information relating to benefits. This knowing provision of false information about benefits to Plan participants, he alleges, constitutes a breach of fiduciary duties

However, the affirmative notice of actuarial increase alleged in Count III does not correspond with the lack of notice of suspension of benefits defining Class 1, so whether or not a plan

---

[30] Doc. 72.

participant received the notice alleged in Class III has nothing to do with their lack of notice regarding suspension of benefits after normal retirement age. Consequently, Count III presents an uncommon and atypical claim vis-a-vis the class. Plaintiff's evidence is devoid of anything indicating that the notice was received by numerous plan participants—or even plaintiff himself. Thus, plaintiff has not demonstrated that the Plan breached its fiduciary duties by providing false information regarding benefits to Class 1 and thus justify certification of Class 1 for this claim.

As plaintiff has not satisfied Rule 23(a) for any claim on behalf of Class 1, I decline to certify Class 1.

### 2.   Class 2

I now consider whether plaintiff has satisfied Rule 23 for certification of Class 2.

#### a.   *Numerosity*

Plaintiff has established numerosity with counsel's attestation that at least 73 individuals accrued benefits before the August 26, 1992, Plan amendment. This evidence is sufficient and proper for the reasons set forth *supra*, and I find that a 73-member class is sufficiently numerous to make class treatment the appropriate vehicle for these Plan participants' claims.[31]

#### b.   *Commonality and typicality*

The commonality and typicality deficiencies that prevent certification of Class 1 do not plague Class 2. Plaintiff purports to bring Claim II and portions of Claim III on behalf of himself and Class 2; these claims allege that the Plan Administrator improperly amended the Plan, resulting in both the reduction of accrued benefits and the reduction of future benefits without the notice required for such reductions under ERISA. Plaintiff asserts that the version of the Plan applicable at the time he began working (the "Former Plan") compensated individuals working beyond normal retirement age by awarding *both* the pension credit for any additional years of service *and* an

---

[31] Although numerosity is not determined by a single benchmark, generally speaking, courts find the numerosity requirement satisfied with 40 or more class members. *See, e.g., Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 482 (2d Cir. 1995) (stating that numerosity is "presumed at a level of 40 members"); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D.Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.").

actuarial adjustment for any deferred benefits. In 1992, the Plan Administrator allegedly resolved to amend the Plan retroactive to 1989, replacing the "both" term with a "greater of" term—effectively removing one of the two forms of compensation. In Count II, plaintiff alleges that because the amendment reduced accrued benefits and future benefits without notice, it violates ERISA and is invalid; in Count III, he alleges that the Plan Administrator breached its fiduciary duties by passing an amendment that reduced benefits. Based on these allegations, it appears that the class members all suffered the same injury, which was based on the same conduct of the Plan.

The Plan collaterally attacks any determination of commonality or typicality, arguing that Plaintiff's claims are not common to, or typical of, the class claims because the class members did not exhaust their administrative remedies, plaintiff failed to submit a damages model, and the class members claims are subject to varying statutes of limitation.[32] None of these arguments prevents a finding of commonality or typicality. Although exhaustion is a requirement when a plaintiff is challenging a Plan's compliance with its own terms in determining benefits,[33] Counts II and III present a statutory, anti-cutback claim that the amendment itself violates ERISA by reducing benefits. As these are legal claims under ERISA rather than benefits claims under the plan itself, they are not subject to the exhaustion requirement.[34]

Nor is the absence of a damages model at this stage a bar to class certification. At the hearing on this motion, plaintiff's counsel clarified that the remedy sought under Count II is a declaration from the court that the amendment was not valid, and thus, the Former Plan remains in effect. Consequently, the monetary relief resulting from a determination in Plaintiff's favor would be calculated using the formulas in the Plan itself, and the Plan has not demonstrated that a damages

---

[32] The Plan also devoted a significant portion of its opposition to the argument that the amendment was valid and *increased*—rather than decreased as plaintiff contends—post-normal retirement age benefits. Because this argument goes directly to the merits of Claim II, it is premature on a motion for certification and more suited for a motion for summary judgment.

[33] *See, e.g.*, *Amato v. Bernard*, 618 F.2d 559, 567-68 (9th Cir. 1980).

[34] *See, e.g.*, *Goodin v. Innovative Technical Solutions, Inc.*, 489 F. Supp. 2d 1157, 1162-63 (D. Haw. 2007).

1  model is needed to establish commonality or typicality in light of these circumstances.

2  Finally, although varying statutes of limitation may apply to class members residing in different states and retiring at different times, "[t]he existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones."[35] "Individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality."[36] The Plan has not briefed the statute-of-limitations issue for Counts II and III, and they base this argument on little more than speculation that different statutory periods may apply.[37] The potential for a statute-of-limitations defense as to some of the class members' claims but not others—based on speculation and not a developed argument—is simply insufficient to defeat class certification. I find that plaintiff has demonstrated commonality and typicality under Rule 23(a)(2) and (3).

### c.   *Adequacy*

The final Rule 23(a) prerequisite is that the person representing the class must be able to "fairly and adequately protect the interests" of all members in the class.[38] The Plan disputes adequacy, arguing that plaintiff has not provided sufficient evidence of his or his counsel's absence of conflict with members of the class, and the Plan generally avers that plaintiff's counsel is not qualified to prosecute a class action. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[39]

---

[35] *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975).

[36] *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 493 (N.D. Cal. 2010).

[37] The parties did undertake briefing on the statute of limitations with respect to plaintiff's benefit claims under Count I. However, as Counts II and III seek a declaration that the 1992 amendment was invalid, it is unclear what, if any, statutes of limitation should apply.

[38] Fed. R. Civ. P. 23(a)(4).

[39] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

1  The Plan has not identified any conflict, and the court does not perceive any at this stage of the case.
2  Plaintiff's attorneys' declarations establish that they have sufficient experience in this area of law
3  and in prosecuting class actions to fairly and adequately represent this class, and they have the
4  resources to see this case through to trial.  Accordingly, with this adequacy finding, plaintiff has met
5  the requirements of Rule 23(a) for certification of Class 2.  Additionally, having considered all the
6  factors under FRCP 23(g)(1)(A), I find that plaintiff Donald Allbaugh is an appropriate
7  representative of this class and that the law firms of Martin & Bonnett, P.L.L.C. and Michael D. Lore
8  P.C. may be appointed as class counsel.

### d.  *Rule 23(b)*

Once all of the Rule 23(a) requirements have been met, a plaintiff must also demonstrate that the class falls into one of the categories of class actions set forth in Rule 23(b).  Plaintiff seeks certification of Class 2 and its claims under Rules 23(b)(1) and (2), and alternatively, under Rule 23(b)(3).  The Plan argues that certification is appropriate under no category. I find that Class 2 and its claims are properly certifiable under Rule 23(b)(2) and (b)(3).

### i.  *23(b)(2)*

Rule 23(b)(2) allows class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."[40]  The primary remedy sought under Count II is a declaration that the 1992 amendment was ineffective. Thus, as the plaintiff alleges that the Plan "acted . . . on grounds generally applicable to the class," declaratory relief with respect to the whole class may be appropriate.  Although the ultimate outcome may include remuneration to class members, this addition does not prevent certification of a (b)(2) class; such monetary damages would be "merely incidental to [the] primary claim for [declaratory] relief."[41]  Plaintiff seeks the same remedies under Count III as Count II, and the theory underlying the

---

[40] Fed. R. Civ. P. 23(b)(2).

[41] *Probe v. State Teachers' Retirement Sys.*, 780 F.3d 778, 780 (9th Cir. 1986).

alleged breach of fiduciary duties is the same on which Count II is based. Thus, I find that Class 2 may be properly certified under Rule 23(b)(2) to maintain the claims it has alleged in Counts II and III.

### ii.    23(b)(3)

I find that class certification is also appropriate under Rule 23(b)(3).[42] Rule 23(b)(3) requires that "[common] questions of law or fact . . . predominate over any questions affecting only individual members" and "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[43] Plaintiff has established that common questions of law and fact would predominate under Counts II and III as those counts relate to Class 2. Both claims are dominated by the determination of whether the amendment was invalid, and if so, whether passing such an amendment breached the Plan's fiduciary duty to plan participants. Although individual issues arise in the calculation of what damages flow from an invalid amendment, the two basic questions dominate the resolution of the case, and the Ninth Circuit recognizes that "the amount of damages is invariably an individual question and does not defeat class action treatment."[44] Further, in determining these two questions, all the claims of all class members are resolved. For this reason, I find that a class action is the most manageable method for addressing the numerous claims, and the interests of judicial economy highly favor class action as the superior method of adjudication. Therefore, certification is also proper under FRCP 23(b)(3).

### Conclusion

Accordingly, and with good cause appearing,

It is hereby ORDERED that **Plaintiff's Motion for Certification [Doc. 38] is GRANTED in part and DENIED in part**. I hereby certify the following class under FRCP 23(b)(2) and (b)(3)

---

[42] Fed. R. Civ. P. 23(b)(3).

[43] *Id.*

[44] *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010)).

for prosecution of Counts II and III in plaintiff's Amended Class Action Complaint[45]:

> A class consisting of all participants (and their eligible beneficiaries) of the California Ironworkers Pension Trust (the "Plan") who: (1) had accrued benefits under the Plan prior to the adoption of the 1992 Plan amendment purporting to be effective as of June 1, 1989; (2) continued in employment past normal retirement age; and (3) did not receive or are not scheduled to receive both an actuarial adjustment to their benefits to compensate them for the delay in receipt of benefits after attainment of normal retirement age plus all of the retirement benefits each participant accrued following attainment of normal retirement age (hereinafter, "the Class").

IT IS FURTHER ORDERED that plaintiff Donald Allbaugh is hereby appointed as the Class Representative;

IT IS FURTHER ORDERED that the law firms of Martin & Bonnett, P.L.L.C. and Michael D. Lore P.C. are appointed as Class Counsel for the Class.

Plaintiff has 30 days to submit a proposed Notice of Class Action for approval under FRCP 23(c)(2) as part of a motion for approval of class notice. Counsel for plaintiff is directed to attempt to reach an agreement with counsel for defendant as to the form and content of this notice a reasonable period of time before submitting the proposed notice to the court. When submitting the motion for approval of class notice, plaintiff's counsel must include a declaration detailing all efforts undertaken to reach an agreement on the form and content of the notice and identifying any unresolved objections.

DATED August 4, 2014.

_____
Jennifer A. Dorsey
United States District Judge

---

[45] Doc. 72.