1

2

3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

4

5

6

7

8

9

10

11

12

Donald Allbaugh, individually and on behalf
of all similarly situated,

      Plaintiff

v.

California Field Ironworkers Pension Trust;
Board of Trustees of the California Field
Ironworkers Pension Trust, Plan
Administrator of the California Field
Ironworkers Pension Trust,

      Defendants

2:12-cv-00561-JAD-GWF

**Order Denying Allbaugh's Motion for
Reconsideration; Granting the Defendants'
Motion for Summary Judgment in Part;
Denying Allbaugh's Motion for Summary
Judgment; Granting the Defendants'
Motion to Seal in Part; Granting
Allbaugh's Motion to Supplement; and
Referring this Case to a Magistrate Judge
for Mandatory Settlement Conference**

[ECF Nos. 137, 142, 144, 145, 150, 178]

13

14

15

16

17

18

19

20

21

22

23

24

      This is an action for withheld benefits, equitable relief, and statutory penalties under the Employee Retirement Income Security Act ("ERISA").  Donald Allbaugh has been a participant in the California Field Ironworkers Pension Trust's pension plan since 1970.  He reached normal retirement age under the plan (age 65) in August 2007.  He then continued working as a safety manager for the same employer and also part time as an instructor for the union until he retired two years later.  Allbaugh did not receive benefit payments while he continued to work past normal retirement age, but he did continue to accrue pension credits.  In calculating Allbaugh's monthly benefit payment, the plan's administrator interpreted the plan and determined that Allbaugh's post-normal-retirement-age employment required his benefit payments to be permanently withheld during the months that Allbaugh had been engaged in that employment.  Thus, the administrator did not actuarially increase the amount of accrued benefit that Allbaugh had earned at normal retirement age for each month that his benefits were withheld.

25

26

27

28

      Allbaugh sues the California Field Ironworkers Pension Trust and the Board of Trustees on behalf of himself and similarly situated workers, claiming that he is entitled to greater pension benefits than he is currently receiving to account for the deferred benefits that he accumulated after reaching retirement age.  He separates his claims into five counts and seeks to recover

1   withheld benefits under 29 U.S.C. § 1132(a)(1)(B) in Counts 1, 2, and 4, equitable relief under

2   29 U.S.C. § 1132(a)(3) in Counts 1–3, and statutory penalties under 29 U.S.C. § 1132(c)(1)(B) in

3   Count 5.

4        I certified a class of participants and their eligible beneficiaries to pursue Counts 2 and 3.[1]

5   But I denied certification of a separate class of participants who worked after normal retirement

6   age and whose benefits are or had been suspended without receiving a suspension-of-benefits

7   notice ("Class 1") to pursue Counts 1, 3, and 4 because it faltered at FRCP 23(a)'s commonality

8   and typicality prerequisites.[2]  Allbaugh now moves me to reconsider that denial, arguing that it is

9   clearly erroneous and that newly discovered evidence warrants certification.[3]  Because Allbaugh

10  has not left me with a definite and firm conviction that a mistake has been committed, and the

11  newly discovered evidence is not relevant to the reasons that I found Class 1 unsuitable for

12  certification, I deny his motion.

13       The parties also move for summary judgment on all five of Allbaugh's claims.[4]  I grant

14  the defendants summary judgment on the portion of Count 1 alleged under § 1132(a)(1)(B)

15  because, as I held more than two years ago in this case, recovery of withheld benefits is not a

16  viable remedy for a plan's failure to provide a suspension notice.[5]  As for the other denial-of-

17  benefit claims (Counts 2 and 4), I review them de novo because the defendants have not

18  established that the plan's terms unambiguously grant them discretion to make eligibility

19  determinations or to interpret the plan, and I find that triable issues of fact preclude summary

20  

21  [1] ECF No. 86 at 14.

22  [2] *Id*. at 6–9.

23  [3] ECF No. 137.

24  [4] ECF Nos. 142, 145.  In conjunction with their summary-judgment motion, the defendants filed
25  a separate request that I take judicial notice under FRE 201 of declarations, pleadings, orders, and
26  a notice of errata that have been filed in this case.  ECF No. 144.  Judicial notice is not required
27  for me to consider the contents of any of those documents—and I have considered them.
    Accordingly, the defendants' request is denied.

28  [5] ECF No. 70 at 11.

judgment.  I deny the defendants' motion to summarily adjudicate the claims seeking equity under § 1132(a)(3) (Counts 1, portions of 2, and 3) as duplicative of the denial-of-benefit claims under § 1132(a)(1)(B) because pleading alternative theories is permitted.  But I grant summary judgment on the portion of Count 5 seeking statutory remedies for the defendants' failure to timely furnish Allbaugh copies of actuarial tables because statutory relief is not legally available for that delay.

Allbaugh also moves for leave to supplement his briefs to discuss a new ERISA decision from the Ninth Circuit,[6] and the defendants move to seal the declaration of Leanne Vance and exhibit 1 thereto.[7]  I grant both Allbaugh's motion for leave to supplement and the defendants' motion to seal exhibit 1.[8]  And, finally, I refer this case to a Magistrate Judge to schedule a mandatory settlement conference.

**Analysis**

**I.    Motion to Amend Class Certification Order**

Allbaugh moves for reconsideration of my order denying certification for his proposed Class 1 under FRCP 23, which provides that orders granting or denying class certification "may be altered or amended before final judgment."[9]  While Rule 23 authorizes courts to alter or amend class-certification orders, it does not supply the reconsideration standard.  Because they are interlocutory, class-certification orders fall under the court's "inherent power to reconsider an interlocutory order for cause, so long as [it] retains jurisdiction."[10]  Cause for reconsideration may exist if "(1) there is newly discovered evidence that was not available when the original motion or response was filed, (2) the court committed clear error or the initial decision was

---

[6] ECF No. 178.

[7] ECF No. 150.

[8] I find all of the pending motions suitable for disposition without oral argument.  L.R. 78-1.

[9] ECF No. 137 at 6 (quoting FRCP 23(c)(1)(C)).

[10] LR 59-1(a); *accord City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (collecting cases).

1    manifestly unjust, or (3) if there is an intervening change in controlling law."[11]

2         The defendants argue that I should reject Allbaugh's reconsideration motion because he

3    does not invoke the correct legal standard.[12]  But I reach its merits because Allbaugh argues that:

4    (1) newly discovered evidence of the defendants' systematic failure to provide suspension-of-

5    benefits notices to participants when they reached normal retirement age warrants certification of

6    Class 1; and (2) I committed clear error by (a) relying on the preamble to the DOL's regulation,

7    (b) failing to consider that proof of reliance is not required in this circumstance, and (c) finding

8    that the failure to send a suspension-of-benefits notice does not give rise to a substantive claim

9    for withheld benefits.  I address these arguments in reverse order and, because they do not

10   concern the deficiency that I found with Count 4,[13] I limit my analysis to Counts 1 and 3.

11   **A.    Allbaugh has not demonstrated that the denial of class certification was**
12   **based on a clearly erroneous understanding of when employment qualifies as**
     **§ 203(a)(3)(B) service.**

13        Allbaugh's theory under Count 1 is that he suffered an unlawful forfeiture when the plan

14   suspended benefit payments to participants who continued to work past normal retirement age

15   without first notifying them that it was suspending their benefits.  Allbaugh claims that he and

16   the members of Class 1 are entitled to recover the actuarial equivalent of the unlawfully withheld

17   benefits plus any additional benefits that accrued under 29 U.S.C. § 1132(a)(1)(B) or equitable

18   relief under § 1132(a)(3).

19        ERISA and the implementing regulations recognize that benefit payments often will be

20   deferred.[14]  ERISA requires pension plans to "provide that an employee's right to his normal

21   _____

22   [11] LR 59-1(a).

23   [12] ECF No. 148 at 4–5.

24   [13] I previously found that Allbaugh had not established commonality and typicality for Class 1's
25   claims in Count 4 because the lack of suspension notice that defines Class 1 does not correspond
26   with the systematic miscalculation in benefits due under the plan's formula that is vaguely
     alleged in Count 4.  ECF No. 86 at 8:5–14.  Allbaugh fails to establish that the grounds he offers
27   for reconsideration cure that defect.  *See generally* ECF No. 137.

28   [14] *Contilli v. Local 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 722 (7th Cir. 2009).

1   retirement benefit is nonforfeitable upon the attainment of normal retirement age. . . ."[15]  Thus,

2   the general rule under ERISA is that an employer must provide an actuarial increase for the time

3   that an employee delays receipt of benefits past normal retirement age to reflect that his

4   retirement will be shorter.[16]  An exception to this general rule—when an actuarial increase is not

5   required and an unlawful forfeiture does not occur—is when the employee's benefits are

6   suspended under 29 U.S.C. § 1053(a)(3)(B),[17] which "allows plans to contain provisions

7   requiring the suspension of benefit payments where an employee works in certain jobs after his . .

8   . normal retirement date."[18]  "Employees who fall in this category are commonly referred to being

9   in 'Section 203(a)(3)(B) service.'"[19]  The Department of Labor's ("DOL's") implementing

10  regulation states that "the employment of an employee subsequent to the time the payment of

11  benefits commenced or would have commenced if the employee had not remained in or returned

12  to employment results in section 203(a)(3)(B) service . . . ."[20]

13      Allbaugh does not dispute that he continued to work in what constitutes § 203(a)(3)(B)

14  service after he attained normal retirement age.  He contends instead that, because the plan failed

15  to provide him with notice that it was suspending his benefit payments, his employment did not

16  qualify as § 203(a)(3)(B) service.  Allbaugh's theory is viable only if the sending of a

---

18  [15] 29 U.S.C. § 1053(a).

20  [16] *See* 29 U.S.C. § 1054(c)(3).

21  [17] Section 1053(a)(3)(B) states that "A right to an accrued benefit derived from employer
22  contributions shall not be treated as forfeitable solely because the plan provides that the payment
    of benefits is suspended for such period as the employee is employed, subsequent to the
23  commencement of payment of such benefits . . . in the case of a multiemployer plan, in the same
    industry, in the same trade or craft, and the same geographic area covered by the plan, as when
24  such benefits commenced."

25  [18] *Canada v. Am. Airlines, Inc. Pilot Ret. Ben. Program*, No. 3:09-0127, 2010 WL 4877280, at
26  *12 (M.D. Tenn. Aug. 10, 2010), *aff'd* 572 Fed. Appx. 309 (6th Cir. 2014).

27  [19] *Id.*

28  [20] 29 C.F.R. § 2530.203-3(c)(2).

5

1 | suspension-of-benefits notice is a condition precedent to an employee being in § 203(a)(3)(B)

2 | service.  Allbaugh argues that the DOL's regulations unambiguously provide that it is, and that I

3 | committed clear error when I found otherwise and further erred when I based that decision, in

4 | part, on language in the preamble to the regulations.[21]  But if there is any ambiguity in the

5 | regulation, Allbaugh continues, then deference should be given to an advisory opinion that the

6 | DOL issued on March 15, 1984, a provision in the Internal Revenue Manual, and a News Release

7 | that the IRS issued on December 3, 1982.[22]

8 | 　　　　The defendants do not address any of these arguments; they instead respond that Allbaugh

9 | ignores the caselaw that I relied on in addition to the regulation's preamble in reaching my ruling,

10 | and that other courts have since likewise found that damages are not available for a plan's failure

11 | to provide a suspension-of-benefits notice.[23]  To alter or amend my class certification order for

12 | clear error, Allbaugh must leave me with a "definite and firm conviction that a mistake has been

13 | committed."[24]  He has not met this "'very exacting standard.'"[25]

14 | 　　　　I disagree with Allbaugh's position that the regulations unambiguously provide that an

15 | employee cannot be characterized to be in § 203(a)(3)(B) service until and unless the plan

16 | provides him with notice that it is suspending his benefits.  For his argument, Allbaugh relies on

17 | a single provision in the regulation that reads, "No payment shall be withheld by a plan pursuant

18 | to this section unless the plan notifies the employee by personal delivery or first class mail during

19 | the first calendar month or payroll period in which the plan withholds payments that his benefits

20 |

21 |

22 | [21] ECF No. 137 at 23–24.

23 | [22] *Id.* at 24–26.

24 | [23] ECF No. 148 at 10–11.

25 | [24] *See United States v. Ruiz-Gaxiola*, 623 F.3d 684, 693 (9th Cir. 2010) (collecting cases).

26 |

27 | [25] *Campion v. Old Republic Home Protection Co., Inc.*, No. 09-cv-748, 2011 WL 1935967, at *1
(S.D. Cal. May 20, 2011) (quoting *Hopwood v. Texas*, 236 F.3d 256, 273 (5th Cir. 2000)

28 | (discussing clear error standard in context of the law-of-the-case doctrine)).

1    are suspended."[26]  But the regulation authorizes a plan to "deduct from benefit payments to be

2    made by [the plan] payments [that had] previously [been] made by [it] during those calendar

3    months or pay periods in which the employee was employed in section 203(a)(3)(B) service. . .

4    ."[27]  Within the provision that Allbaugh relies on, the regulation requires a plan intending to

5    "offset any suspendible amounts actually paid during the periods of employment in section

6    203(a)(3)(B) service" to "specifically identify the periods of employment, the suspensible

7    amounts [that] are subject to the offset, and the manner in which the plan intends to offset the

8    suspendible amounts" within the suspension-of-benefits notice.[28]

9            Allbaugh's interpretation violates the cannons of statutory interpretation that require a

10    regulation to "be read as a whole" and "construed so that effect is given to all its provisions, so

11    that no part will be inoperative or superfluous, void or insignificant.'"[29]  When read as a whole,

12    the regulations plainly provide that a suspension notice is not required for an employee to be

13    considered in or have been in § 203(a)(3)(B) service.  So the failure to provide a suspension

14    notice does not give rise to a substantive claim for withheld benefits.  Other courts that have

15    examined this issue have come to similar conclusions,[30] and Allbaugh has provided me no

16    compelling reason to depart.

17            Moreover, the preamble to the regulations states that the notice provision:

18            affects only the plan's right to begin withholding payments—it
                 does not affect the plan's entitlement to ultimately **withhold** or
19            recoup all payments which it is entitled to **withhold** under §
                 2530.203-3.  Thus, the effect of this provision is that, **solely for**
20

---

21    [26] ECF No. 137 at 23 (emphasis removed) (quoting 29 C.F.R. § 2503.203-3(b)(4)).

22    [27] 29 C.F.R. § 2530.203-3(b)(3).

23
       [28] *Id.* at § 2530.203-3(b)(4).
24

25    [29] *Corley v. U.S.*, 556 U.S. 303, 314–15, n.5 (2009) (quotation marks and references omitted)
       (collecting authorities).
26

27    [30] *See, e.g., Atkins v. Northwest Airlines, Inc.*, 967 F.2d 1197 (8th Cir. 1992) (recognizing that
       "ERISA provides that any actuarial increase in benefits during the delay caused by continued
28    work may be used to offset the statutorily mandated accrual of retirement benefits past retirement
       age"); *Monks v. Keystone Powdered Metal Co.*, 78 F. Supp. 2d 647 (E.D. Mich. 2000) (finding
       that ERISA does not authorize an affirmative damage recovery to remedy a notice failure).

1

2

3

**purposes of a plan's entitlement to commence the withholding of benefits, a retiree will not be deemed to be employed in section 203(a)(3)(B) service** until the plan has complied with the notice requirements of paragraph (b)(4) of the regulation.[31]

4   Allbaugh argues that my reliance on the preamble was clearly erroneous, and that I should give

5   deference instead to a 1984 DOL advisory opinion,[32] a provision in the Internal Revenue

6   Manual,[33] and a news release issued by the IRS.[34]  Allbaugh provides a string of citations for the

7   proposition that relying on extra-regulation interpretation is permitted only when the regulation

8   itself is ambiguous.[35]  And he concludes that the interpretations he supplies merit greater

9   deference than the DOL's preamble.[36]  But Allbaugh does not articulate what level of deference,

10  if any, should be afforded to these items, tacitly inviting the court to conduct the deference

11  analysis for him.  I decline that invitation—except to note that DOL advisory opinions only bind

12  the parties to the letter, have no precedential value, and are not entitled to deference[37]; the

13  Internal Revenue Manual does not have the force of law[38]; and the IRS news release does not add

14  anything to this discussion.

15          In sum, I cannot say that the regulations clearly provide that an employee cannot be

16  considered to be in § 203(a)(3)(B) service until and unless the plan provides him notice that it is

17

---

18  [31] 46 FED. REG. 8894-01, 8901, 1981 WL 158784 (Jan. 27, 1981) (emphasis added).

19

20  [32] *Mr. Frank B. Reilly, Jr.*, Opinion No. 84-13A (E.R.I.S.A.), 1984 WL 23428 (U.S. Dept. Labor Mar. 15, 1984).

21  [33] 2A I.R.M. Abr. & Ann. § 4.72.14.3.5.3 (Thomson Reuters current through Sept. 2016).

22  [34] IR-82-139 (I.R.S.), 1982 WL 210486 (Internal Revenue Serv. Dec. 3, 1982).

23

24  [35] *See* ECF No. 137 at 23–24.

25  [36] *See id.* at 26.

26  [37] *Barker v. Pick N Pull Auto Dismantlers, Inc.*, 819 F. Supp. 889, 896 n.11 (E.D. Cal. 1993) (citing *Keystone Consolidated Indust. v. C.I.R.*, 951 F.2d 76, 79 (5th Cir. 1992); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 n.5 (1992)).

27

28  [38] *Fargo v. C.I.R.*, 447 F.3d 706, 713 (9th Cir. 2006) (collecting cases).

1  suspending his benefits.  Nor do I find that the regulations are ambiguous about what effect the

2  act or omission of sending a suspension notice has on a plan's entitlement to ultimately withhold

3  or recoup benefit payments made while an employee was in § 203(a)(3)(B) service.  Because it

4  has no effect, the failure to provide a suspension notice does not give rise to a substantive claim

5  for withheld benefits under ERISA.[39]  Even if I were to find that the regulations are ambiguous in

6  that regard, Allbaugh has not left me with a definite and firm conviction that I made a mistake

7  when I found that he does not have a substantive claim for withheld benefits.

8      **B.**    **Allbaugh has not shown that the denial of certification was based on a clearly**
              **erroneous understanding of the relief available and the standard of proof**

9                **required to obtain it.**

10      Allbaugh next takes aim at my determination—conveyed first in my order granting his

11  motion to amend his complaint, and which later formed a foundation of my order denying

12  certification of proposed Class 1[40]—that the members of proposed Class 1 may recover only

13  consequential or equitable damages, and the need to prove these damages individually renders

14  the class members' claims under this theory atypical and bars class certification.[41]  To do this,

15  Allbaugh attempts to recharacterize Class 1's claims as the type of claims that do not require

16  individual proof.  He likens them to the "[i]nformation-related" ERISA claims in *CIGNA Corp.*

17  *v. Amara* that the Supreme Court held may not require individual proof of harm.[42]

18      *Amara* is materially distinguishable.  The plaintiff in *Amara* sued for material plan-based

19

20

21

_____

22  [39] As I previously found, the effect of this decision is that failed notice gives rise only to

23  consequential or equitable damages associated with the defendants' improperly commencing to
withhold benefit payments—harms, if any, that would be unique to each member of the proposed

24  class.  ECF No. 86 at 7–8.  Thus, the proposed class cannot satisfy the commonality and
typicality prerequisites.

25

26  [40] ECF No. 70 at 11; ECF No. 86 at 7.

27  [41] *Id*.

28  [42] ECF No. 137 at 18 (citing *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)).

misrepresentations and omissions that violated ERISA §§ 102(a), 104(b), and 204(h).[43]  The district court granted relief for those violations in the form of reformation and equitable damages under ERISA § 502(a)(1)(B) and 29 U.S.C. § 1132(a)(1)(B).[44]  The Supreme Court found that this relief was not authorized by ERISA § 502(a)(1)(B) and 29 U.S.C. § 1132(a)(1)(B), but it was authorized by ERISA § 502(a)(3) and 29 U.S.C. § 1132(a)(3), "to which the District Court also referred."[45]  The essential holding of *Amara* is that some of ERISA's provisions authorize traditional equitable remedies that may be awarded without a showing of detrimental reliance.[46] Exactly which remedies are available depends on which ERISA provision applies; and whether a claimant must show detrimental reliance will depend on the individual facts and circumstances of each case.[47]

But the theory that Allbaugh asserts on behalf of Class 1 in Count 1 is exclusively based on the failure to provide notice required by 29 C.F.R. § 2530.203-3(b)(4)—not one of the ERISA provisions that the High Court evaluated in *Amara*.[48]  Allbaugh has not shown that the failure to give the suspension notice required by 29 C.F.R. § 2530.203-3(b)(4) can or should be treated like the claims for material misrepresentations made in the plan descriptions, summaries of material

---

[43] ERISA §§ 102(a) and 104(b) require plan administrators to "provide beneficiaries with summary plan descriptions and with summaries of material modifications, 'written in a manner calculated to be understood by the average plan participant,' that are 'sufficiently accurate and comprehensive to reasonably apprise participants and beneficiaries of their rights and obligations under the plan.'"  *Amara*, 536 U.S. at 432 (quoting 29 U.S.C. §§ 1022(a), 1024(b)).  ERISA § 204(h) forbids "amendment of a pension plan that would 'provide for a significant reduction in the rate of future benefit accrual' unless the plan administrator also sent a 'written notice' that provided either the text of the amendment or summarized its likely effects."  *Id.* (quoting 29 U.S.C. § 1054(h); Treas. Reg. § 1.411(d), 63 Fed. Reg. 68682 (1998)).

[44] *Amara*, 563 U.S. at 431–32.

[45] *Id.* at 425.

[46] *Id.* at 444–45.

[47] *Id.* at 425; 444–45.

[48] *See* ECF No. 72 at 13–15, ¶¶ 64–74.

1   modifications, and plan-amendment notices that were alleged in *Amara*. And even if the claims

2   in *Amara* could be construed as analogous to Class 1's claims, *Amara* is still not dispositive of

3   the issue here: whether the nature of relief sought is amenable to class-wide proof. The *Amara*

4   Court did not assess typicality or any class-certification issues; it only evaluated the correct legal

5   standard for determining whether the notice violations had caused the participants "sufficient

6   injury to warrant legal relief."[49]  Allbaugh's reliance on *Amara* is thus misplaced.

7         The Ninth Circuit's recent decision in *Moyle v. Liberty Mut. Ret. Ben. Plan* does not

8   change this analysis.[50]  When acquiring Old Golden Eagle Insurance Company, Liberty Mutual

9   orally represented to Golden Eagle's employees that their past service with Golden Eagle would

10  be credited under Liberty Mutual's pension plan.[51]  Induced by the promise, many employees

11  remained on and became Liberty Mutual employees after the sale.[52]  But when Liberty Mutual

12  amended the plan four years later, it revised it to state that the employees' past service with

13  Golden Eagle would be credited "*only* for the purposes of eligibility, vesting, early retirement

14  and spousal benefits."[53]

15        The employees sued for withheld benefits under § 1132(a)(1)(B), civil penalties for

16  failing to provide documents under 29 C.F.R. § 2560.503-1(h)(2)(iii), failing to meet the

17  requirements for summary plan descriptions required by 29 C.F.R. § 2520.102-2(a), and

18  equitable relief of surcharge and reformation under § 1132(a)(3).[54]  In certifying a class for those

19  claims, the district court presumed that the class members had relied on Liberty Mutual's oral

20  representations about the plan's provisions. Liberty Mutual appealed the class-certification

21

22  [49] *Amara*, 563 U.S. at 425.

23  [50] *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948 (9th Cir. 2016).

24  [51] *Id.* at 964.

25  [52] *Id.* at 955.

26  [53] *Id.* at 959.

27  [54] *Id.* at 956.

28

1   order; on review, the Ninth Circuit panel found that it "need not decide whether the district court

2   erred in presuming Appellants' reliance to certify the class.  Instead, [it affirmed] the district

3   court on the ground that where the defendant's representations were allegedly made on a uniform

4   and classwide basis, individual issues of reliance do not preclude class certification."[55]

5       *Moyle* is distinguishable because—as Allbaugh makes clear in the introduction of his

6   reply—defendants' representations were not made on a uniform and classwide basis.  Rather,

7   Allbaugh alleges that the defendants failed to send an individualized notice that was crafted to

8   the unique employment circumstances of each member of the proposed class.[56]

9       I am also not persuaded that the plaintiffs are entitled to the presumption of reliance that

10  the Supreme Court recognized in the securities context in *Affiliated Ute Citizens of Utah v.*

11  *United States*.[57]  The Ninth Circuit has recognized that the *Affiliated Ute* presumption of reliance

12  applies only when the claims are primarily based on omissions instead of active

13  misrepresentations.[58]  But the Ninth Circuit has not advised whether it would apply the

14  presumption in an ERISA case, and the trial courts that have considered the question have been

15

16

---

17  [55] *Id.* at 964–65 (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)).

18  [56] ECF No. 154 at 2 (arguing that the class members can be "presumed to have suffered the same
19  injuries: their normal retirement benefits were permanently withheld upon retirement and would
20  not have been withheld **if Defendants had timely disclosed Defendants' determination that
    each class member's post- normal retirement age employment was subject to suspension
21  and permanent forfeiture**" (emphasis added)).  The harm of withheld benefits cannot be
22  recovered following my continued finding that the failure to provide a suspension notice "only
    gives rise to consequential or equitable damages associated with improperly commencing
23  withholding payments. . . ."  ECF No. 86 at 7.

24  [57] *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54 (1972).

25  [58] *Binder v. Gillespie*, 184 F.3d 1059, 1063–64 (9th Cir. 1999) (noting that the Ninth Circuit has
26  applied the *Affiliated Ute* presumption of reliance "to cases that 'are, or can be, cast in omission
    or non-disclosure terms,'" which suggests that this presumption "should be confined to cases that
27  primarily allege omissions").  *Accord, Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940 (9th
    Cir. 2009) (putative class members cannot avail themselves of the *Affiliated Ute* presumption of
28  reliance unless they primarily allege omissions).

1    reluctant to do so.[59]  Even if I were to conclude that the *Affiliated Ute* presumption should extend

2    to ERISA cases, I would not apply it here because I cannot conclude that Allbaugh's claims are

3    "primarily" omissions-based.  Accordingly, Allbaugh has not demonstrated that my decision to

4    decline certification for Class 1 was clearly erroneous.

5                  **C.      The newly discovered evidence does not cure Class 1's defects.**

6           This leaves the issue of the newly discovered evidence—that the defendants have

7    systematically failed since approximately April 1998 to provide suspension notices to

8    participants when they reach normal retirement age.  Even assuming that Allbaugh's

9    interpretation of this disputed evidence is correct, it does not alter my analysis or finding that

10   Class 1 is not suitable for certification.  The defendants' pattern and practice of notice violations

11   does not create a substantive claim for withheld benefits.  This evidence also does not change the

12   nature of Allbaugh's case to one that is primarily about omissions—he has always alleged this

13   was the defendants' practice, and the omission count does not rise in tandem with the number of

14   participants who did not receive the information.  Because this evidence is not relevant to those

15   inquiries, it does not warrant reconsideration of my prior decision not to certify Class 1.

16   Accordingly, Allbaugh's motion for reconsideration of the class-certification order[60] is denied in

17   its entirety.

18   **II.    Cross-motions for Summary Judgment**

19          **A.      Legal standard**

20          The legal standard governing the parties' motions is well settled: a party is entitled to

21   summary judgment when "the movant shows that there is no genuine issue as to any material fact

22

23

_____

24   [59] *See, e.g., Kenney v. State St. Corp.*, 754 F. Supp. 2d 288, 293 (D. Mass. 2010) (declining to

25   apply the presumption because "it is unclear whether" *Affiliated Ute* applies to ERISA cases and,
     "even if it did, it would provide not support for the plaintiff" in that case because his claims were

26   based "primarily" on "an affirmative misrepresentation on which the plaintiff must prove he

27   relied").

28   [60] ECF No. 137.

                                                          13

and the movant is entitled to judgment as a matter of law."[61]  An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.[62]  A fact is "material" if it could affect the outcome of the case.[63]

When considering a motion for summary judgment, I view all facts and draw all inferences in the light most favorable to the nonmoving party.[64]  The purpose of summary judgment is "to isolate and dispose of factually unsupported claims"[65] and to determine whether a case "is so one-sided that one party must prevail as a matter of law."[66]  It is not my role to weigh evidence or make credibility determinations.[67]  If reasonable minds could differ on material facts, summary judgment is inappropriate.[68]

If the moving party shows that there is no genuine issue as to any material fact, the burden shifts to the nonmoving party, who must "set forth specific facts showing that there is a genuine issue for trial."[69]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; the nonmoving party "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient

---

[61] FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[62] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[63] *Id.* at 248.

[64] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[65] *Celotex Corp.*, 477 U.S. at 323–24.

[66] *Anderson*, 477 U.S. at 252.

[67] *Id.* at 249, 255.

[68] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[69] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 323.

1   evidentiary basis on which a reasonable fact finder could find in his favor.[70]  When reviewing the

2   parties' papers, I only consider properly authenticated, admissible evidence.[71]

3   **B.    Summary of the parties' summary-judgment positions**

4   Allbaugh alleges in Count 1 that the defendants violated ERISA and the plan by

5   withholding benefit payments before first sending a suspension notice.  He seeks to recover the

6   withheld benefits, an equitable surcharge, and a permanent injunction.  He alleges in Count 2 that

7   the defendants violated ERISA by amending the plan: (a) in 1991 to provide for the suspension

8   of benefits for participants who worked more than 40 hours in any month after the age of 65 and

9   setting 65 as the upper-age limit for the accrual of benefits, and (b) in 1992 to reduce benefits

10  earned by participants who delay their retirement past age 65 by offsetting actuarial adjustments

11  that would become due with additional benefits earned after age 65.  In Count 3, he alleges that

12  the defendants breached their ERISA fiduciary duties by failing to provide suspension notices,

13  materially misrepresenting the effect of the 1991 and 1992 amendments, and in retroactively

14  adopting those amendments.  In Count 4, he claims that the defendants violated the terms of the

15  plan by committing the bad acts alleged in Count 3 and, thus, also miscalculated Allbaugh's

16  benefits.  And in Count 5, Allbaugh alleges that the defendants violated ERISA by failing to

17  furnish him with the trust agreement and actuarial tables used to calculate his benefits.

18  The defendants move for summary judgment on all five of Allbaugh's claims.  They

19  argue that Counts 1–4 are barred by statutes of limitation and under the doctrine of laches.  They

20  add that Count 1 fails as a matter of law because the failure to provide a suspension notice does

21  not give rise to a substantive claim for benefits.  The portions of Counts 1 and 2 alleged under §

22  1132(a)(3) must be summarily adjudicated in the defendants' favor because they are duplicative

23  of the portions of those claims alleged under § 1132(a)(1)(B), they contend.  Counts 2 and 3 fail

24  because the 1991 and 1992 amendments did not reduce an accrued benefit or the rate of future

25

26  [70] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v.*

27  *NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

28  [71] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

1    benefit accruals and, thus, the defendants were not required to provide an ERISA § 204(h) notice.

2    And, finally, defendants argue that they are entitled to summary judgment on Count 5 because

3    Allbaugh received the operative plan documents on numerous occasions prior to his request.

4        Allbaugh countermoves for summary judgment on Counts 2–5. He argues that judgment

5    is warranted on Counts 2–4 because the plain language of the plan prior to the 1991 and 1992

6    amendments allowed participants to continue working in covered employment without the

7    suspension of their benefits and with the ability to continue accruing pension credits. He adds

8    that the record shows that the plan was amended in 1991 and 1992 to sweep active participants

9    into the plan's suspension rules. Allbaugh argues that I must apply the de novo standard of

10   review because the plan does not grant the defendants discretionary authority to determine

11   eligibility for benefits or to construe the terms of the plan. Finally, he contends that he is entitled

12   to summary judgment on Count 5 because the defendants unreasonably delayed his access to the

13   trust agreement and the actuarial tables used to calculate his benefits.

14

15   **C.    Plaintiff's claims are not barred by statutes of limitation or the doctrine of laches.**

16       The defendants argue that Counts 1–4 are barred on statute of limitations grounds or the

17   doctrine of laches. Different standards apply to claims alleged under § 1132(a)(1)(B) and those

18   alleged under § 1132(a)(3) or for the breach of an ERISA fiduciary duty, so I evaluate these

19   claims separately.

20

21   **1.    Claims under 29 U.S.C. § 1132(a)(1)(B)—Count 4 and portions of Count 2**

22       "ERISA does not provide its own statute of limitations for suits to recover benefits under

23   29 U.S.C. § 1132(a)(1)(B). Under Ninth Circuit precedent, district courts must apply the state

24   statute of limitations that is most analogous to an ERISA benefits-recovery program."[72] In an

25   ERISA case, the court "ordinarily borrow[s] the forum state's statute of limitations so long as

26

27   _____

28   [72] *Withrow v. Halsey*, 655 F.3d 1032, 1036 (9th Cir. 2011) (quoting *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Prog.*, 222 F.3d 643, 646 (9th Cir. 2000)).

application of the state statute's time period would not impede effectuation of federal policy."[73]

The defendants argue that California is the forum state because that is where the plan is administered, the union is located, and most of the board members, employees, and class members reside.[74] But they do not point to any choice of law provision in the plan documents that calls for California law to apply, nor do they demonstrate that the application of Nevada's limitations periods would impede the effectuation of federal policy. I thus decline the defendants' request to consider California the forum state, and I apply Nevada law. The parties agree that the most analogous limitations period for the claims alleged under § 1132(a)(1)(B) is the limitation period for claims arising from a breach of a written contract. In Nevada, a breach-of-written-contract claim is subject to a six-year limitation period.[75]

While state law supplies the limitation period, when a cause of action accrues is a question of federal law.[76] Federal law provides that "an ERISA claim 'accrues either at the time benefits are actually denied, or when the [participant] has reason to know that the claim has been denied.'"[77] "A claimant has a 'reason to know' under the second prong of our accrual test when the plan communicates a 'clear and continuing repudiation of a claimant's rights under a plan such that the claimant could not have reasonably believed but that his . . . benefits had been finally denied.'"[78]

There is no dispute that Allbaugh's claims are timely under the first prong of the test. The defendants argue that they are untimely under the second prong, however, because Allbaugh

---

[73] *Wang Laboratories, Inc. v. Kagan*, 990 F.2d 1126, 1128 (9th Cir. 1993) (citing *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705 (1966)).

[74] ECF No. 142 at 18.

[75] NEV. REV. STAT. § 11.190(1)(b).

[76] *Wise v. Verizon Comm., Inc.*, 600 F.3d 1180, 1188 (9th Cir. 2010).

[77] *Id.* (quoting *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Prog.*, 222 F.3d 643, 649 (9th Cir. 2000)).

[78] *Id.* (quoting *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1031 (9th Cir. 2006)).

17

1   had reason to know well before his benefits were denied that he was subject to the suspension

2   rules if he continued to work in covered employment after age 65.  The defendants point to the

3   plan amendments that were adopted in 1991 and 1992 and argue that several rounds of notice

4   about those amendments were provided to the participants in the 20 years since they were

5   adopted.[79]

6         Taking the facts in the light most favorable to Allbaugh, the record reveals that the

7   defendants did provide summary plan descriptions (SPDs) and copies of the plan to those

8   participants that the defendants had a current addresses for in 1995, 1997, and 2004.  The record

9   also reveals that publishing and mass mailing of plan documents was conducted by the

10   defendants in-house in 1995 and 1997 and by outside vendors in 2004.  However, it is unclear

11   whether—and if so, how—the participants were provided with copies of the SPDs, plans, or

12   notices of amendments before that time.  This evidence gap is material because two key

13   components of Allbaugh's theory of the case are that: (a) the 1991 and 1992 amendments

14   significantly and detrimentally altered what the plan previously provided regarding active

15   participants who continued to work past age 65, and (b) the notices, SPDs, and plans since sent

16   materially misrepresented the effect of those amendments.

17         There are also questions of fact about whether Allbaugh received any of this information.

18   Allbaugh has denied in deposition testimony and sworn responses to requests for admission that

19   he received any of this information.[80]  The defendants' response to Allbaugh's denial—that he

20   acknowledged receiving pamphlets over the years but could not recall exactly what they were and

21   he did not retain them because he was an ironworker and not in document retention—effectively

22   asks the court to make a credibility determination.[81]  I cannot find on this record that there was a

---

[79] ECF No. 142 at 21–22.

[80] ECF No. 161-4 at 3–4; ECF No. 161-6 at 3–4 (at 18:10–19:25 of the transcript).

[81] Neither party has demanded a jury trial, but I am not entitled to make credibility determinations or weigh conflicting evidence in ruling on the parties' summary judgment motions; those factual disputes are best left for the bench trial.  *See Anderson*, 477 U.S. at 252.

clear and continuing repudiation of Allbaugh's claimed rights under the plan that would render his belief that his benefit payments were not subject to permanent withholding unreasonable. Accordingly, the defendants' motion for summary judgment on statute-of-limitations grounds as to the claims alleged under 29 U.S.C. § 1132(a)(1)(B) is denied.

### 2.  Claims under 29 U.S.C. § 1132(a)(3)—Counts 1 and 3 and portions of Count 2

Claims alleging a breach of an ERISA fiduciary duty or seeking equity under 29 U.S.C. § 1132(a)(3)[82] are governed by ERISA's three- or six-year statute of limitations, depending on the circumstances:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.[83]

The defendants do not move under this standard for the remaining portion of Count 1 and the portion of Count 2 that is alleged under § 1132(a)(3); they move under this standard only as to the breach-of-fiduciary-duties claim in Count 3.[84]  I therefore limit my analysis to Count 3.

The defendants repeat for Count 3 the argument that they made for Counts 2 and 4: Allbaugh had actual knowledge of the alleged breaches and violations long ago because the first

---

[82] To obtain equitable relief under 29 U.S.C. § 1132(a)(3), the plaintiff must establish that the defendant is an ERISA fiduciary who, acting in a fiduciary capacity, "violate[d] ERISA-imposed fiduciary obligations."  *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004).

[83] 29 U.S.C. § 1113.

[84] *See* ECF No. 142 at 24–25.

occurred in 1991 and he was provided SPDs and rules and regulations when the plan was amended and restated in 1992, 1995, 1997, and 2004.  But for the reasons explained above, genuine issues of fact remain about what notice the participants received about the plan prior to the 1991 and 1992 amendments and if Allbaugh had knowledge of them until after his benefits were finally determined.

Further, the last action that constituted a part of the breach was the failure to send a suspension notice when Allbaugh reached normal retirement age but continued working and had his benefit payments suspended.  Allbaugh reached that age in August 2007[85] and filed suit five years later,[86] within the six-year statutory window.  Accordingly, the defendants' motion for summary judgment on statute-of-limitations grounds as to Count 1 and 3 and the portions of Count 2 alleged under 29 U.S.C. § 1132(a)(3) is denied.

### 3.    *Laches*

Defendants contend that, even if Allbaugh's claims may be technically timely, they are barred by the doctrine of laches.  "Laches is an equitable defense that prevents a plaintiff, who 'with full knowledge of the facts, acquiesces in a transaction and sleeps on his rights.'"[87]  "To prove laches, the 'defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself.'"[88]  The triable issues of fact that preclude summary judgment on statutes-of-limitation grounds likewise prevent me from determining, as a matter of law, that Allbaugh unreasonably delayed this lawsuit.  Accordingly, the defendants' motion for summary judgment as to Counts 1–4 under the doctrine of laches is denied.

---

[85] ECF No. 145 at 12, ¶ 3.

[86] ECF No. 1.

[87] *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1121, 1126 (9th Cir. 2012) (quoting *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950–51 (9th Cir. 2001)).

[88] *Id.* (quoting *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000)).

1

2

### D.   Defendants are entitled to summary judgment on Allbaugh's 29 U.S.C. § 1132(a)(1)(B) claim in Count 1.

3    The defendants seek summary judgment on Count 1, arguing that neither ERISA nor its

4   implementing regulations authorizes a substantive claim for benefits for the failure to provide a

5   suspension notice.[89]  As I concluded in my May 20, 2014, order, Allbaugh legally cannot recover

6   the withheld benefits themselves under § 1132(a)(1)(B) for the defendants' alleged failure to

7   comply with that notice regulation,[90] so that claim fails as a matter of law.  But he also seeks

8   equitable relief under § 1132(a)(3), which may be available if he can demonstrate that he suffered

9   actual harm from the improper commencement of the suspension of his benefits.[91]  Accordingly,

10   I grant summary judgment in defendants' favor on the portion of Count 1 alleged under §

11   1132(a)(1)(B), but I deny it as to the portion alleged under § 1132(a)(3).

12

### E.   Summary judgment is not available based on duplicative relief.

13    The defendants next argue that they are entitled to summary judgment on Allbaugh's

14   claims brought under § 1132(a)(3)—ERISA's catchall provision—because he also seeks the

15   same relief under more specific ERISA statutes, and equitable relief is unavailable when a

16   plaintiff's claim is covered by a discrete ERISA statute.[92]  The Ninth Circuit recently analyzed

17   this issue in *Moyle* and concluded that, while caselaw prohibits plaintiffs from *recovering* under

18   duplicate theories, they may "present § 1132(a)(1)(B) and § 1132(a)(3) as alternative—rather that

19   duplicative—theories of liability."[93]

20

21   [89] ECF No. 142 at 27–28.

22   [90] ECF No. 70 at 11 ("although no substantive claim for benefits is available to Plaintiff and the
23   proposed class, they may still be entitled to consequential or equitable damages—if they can
      prove those damages—for Defendant's unauthorized commencement of withholding benefit
24   payments").

25   [91] *Id.*

26   [92] ECF No. 142 at 28–30.

27   [93] *Moyle*, 823 F.3d at 960–62 (adopting the Eighth Circuit's approach to the Supreme Court's
28   decisions in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), and *CIGNA Corp. v. Amara*, 563 U.S.

1   Neither Allbaugh nor the class has yet recovered under any theory; I have denied

2   Allbaugh's ability to recover on Count 1 under § 1132(a)(1)(B); and the § 1132(a)(3) claims are

3   pleaded as alternative, rather than duplicative, theories of liability.  If Allbaugh and the class are

4   "unable to recover benefits based on an interpretation and enforcement" of the plan under §

5   1132(a)(1)(B), they might still seek equitable remedies like reformation, surcharge, estoppel, and

6   restitution under § 1132(a)(3).  Accordingly, the defendants are not entitled to summary

7   judgment on Allbaugh's § 1132(a)(3) claims.

8   **F.    Summary judgment on Counts 2, 3, and 4 is not available.**

9   ***1.    Standard of review***

10   To properly evaluate the parties' summary-judgment arguments regarding Allbaugh's

11   denial-of-benefits claims (Counts 2 and 4) and his breach of ERISA fiduciary duty claim (Count

12   3), I must first decide whether the administrator's interpretation of the plan and benefit-eligibility

13   determinations are subject to deference.  "[A] denial of benefits challenged under §

14   1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the

15   administrator or fiduciary discretionary authority to determine eligibility for benefits or to

16   construe the terms of the plan."[94]  For a plan to alter the default de novo standard of review, it

17   "must unambiguously provide discretion to the administrator."[95]  The defendants argue that this

18   plan does;[96] they bear the burden to show it.[97]

19   To discharge their burden, the defendants identify provisions in the 2004, 1992, and 1987

20

21

22   421 (2011)).

23   [94] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

24   [95] *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (quoting *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999) (en banc)).

25

26   [96] *See e.g.* ECF No. 155 at 13.

27   [97] *Ingram v. Martin Marietta Long Term Disability Income Plan for Salaried Employees of Transferred GE Operations*, 244 F.3d 1109, 1112 (9th Cir. 2001) (quoting *Kearney*, 175 F.3d at 1090).

28

plan documents.[98]  The 2004 provision that they rely on is contained in the "Message from the Board of Trustees" that precedes the summary plan description ("SPD").[99]  This document provides: "Please remember that only the full Board of Trustees is authorized to interpret the Plan.  Information you receive from the Union or individual employers or their representatives should be regarded as unofficial.  Any information or opinion concerning your rights under the Plan, to be official, must be communicated to you in writing, signed on behalf of the full Board of Trustees."[100]  It further provides that, "[i]f there is any discrepancy between the SPD and the Rules and Regulations, the Rules and Regulations will govern."[101]

The first of the 1992 provisions that the defendants rely on—like the 2004 provision—is contained in "A Message from the Board of Trustees of the California Ironworkers Field Pension Trust" that precedes the SPD and includes similar language as the 2004 provision.[102]  The other 1992 provision is contained in a portion of the plan documents entitled "Employee Retirement Income Security Act of 1974" and is either part of the SPD or is an extraneous document itself.[103]

---

[98] ECF No. 155 at 13:19–22, 22:3–6.

[99] ECF No. 145-6 at 3; *accord* ECF No. 76-4 at 113.  Gloria Loot, benefits manager of the Ironworkers Employees' Benefit Corporation and custodian of the plan documents, attests that the copies of each booklet attached to her declaration contain both the "Summary Plan Descriptions ('SPD') and the Restatements of the Rules and Regulations of the Pension Plan for the California Ironworkers Field Pension Trust ('Plan')."  ECF No. 76-1 at 1–2.  Loot provides copies of each for the 1978, 1982, 1987, 1992, and 2004 years.  *Id.* at 2.

[100] *Id.*

[101] *Id.*

[102] ECF No. 76-3 at 4.

[103] *Compare* ECF No. 76-3 at 5 (table of contents identifying the "Employee Retirement Income Security Act of 1974" portion as being separate from the "Rules and Regulations" portion, which is how the defendants appear to identify the plan's terms) *with* ECF No. 76-3 at 23 (heading identifying the beginning of the "Restatement of the Rules and Regulations of the Pension Plan for the California Ironworkers Field Pension Trust," which immediately follows the portion of the 1992 plan documents that the defendants rely on); *accord* ECF 76-1 at 2, ¶ 4 (custodian of the plan documents declaring that the restatements of the "Rules and Regulations" are the "Plan").

This document provides that "Only the Board of Trustees of the Plan has the authority to determine eligibility for benefits and . . . interpretation and application of the Rules and Regulations of the Plan."[104]  The 1987 provisions that the defendants rely on are identical to the 1992 provisions and contained either in the SPD or another extraneous document.[105]

But extraneous documents like SPDs are not part of a plan's terms.[106]  The defendants do not identify a single provision in the plan itself—the "Rules and Regulations"—that unambiguously gives the trustees the authority to interpret the plan's terms or to make eligibility determinations.  Nor do they argue that the plan incorporates any of the extraneous documents by reference.  Several courts have considered—and rejected—the notion that an SPD or other extraneous document can "secure deferential judicial review when the policy itself is silent."[107]  I agree with the reasoning of these courts.  Because the defendants have failed to show that the plan unambiguously gives the trustees the discretion to interpret the plan's terms or to make benefit-eligibility determinations, the proper standard of review is de novo.

### 2.  Disputed facts preclude summary judgment on Counts 2–4.

Resolution of Counts 2–4 turns on whether the defendants breached their fiduciary duties or otherwise violated ERISA or the terms of the plan when they amended it in 1991 and 1992.  Overarching those issues is the parties' dispute about whether, before those amendments, the plan suspended benefit payments to active participants who continued to work after normal retirement age in covered employment.  Allbaugh argues that I do not have to look any further

---

[104] ECF No. 76-3 at 23.

[105] ECF No. 76-2 at 3, 24.

[106] *Amara*, 563 U.S. at 438; *accord Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 500 Fed. Appx. 575, 577 (9th Cir. 2012).

[107] *McHenrey v. PacificSource Health Plans*, 643 F. Supp. 2d 1236, 1241–43 (D. Or. 2009) (collecting cases); *accord Noah U. v. Tribune Co. Med. Plan*, 138 F. Supp. 3d 1134, 1143–46 (C.D. Cal. 2015) (collecting cases) ("other documents may constitute Plan documents where they are incorporated by reference"); *Ingorvaia v. Reliastar Life Ins. Co.*, 944 F. Supp. 2d 964, 965–67 (S.D. Cal. 2013) (same).

than the plain language of the plan to determine that it unambiguously excludes a "Participant" like him from the suspension provision because it discusses only "Pensioners." The defendants respond that I have to consider extrinsic evidence to determine what the suspension provision means because "Pensioner" and "Participant" are used ambiguously in the plan. The parties focus their arguments on the plan as amended and restated as of July 1, 1987, which appears to have been the plan in effect before the 1991 and 1992 amendments.[108] I follow their cue and restrict my analysis to the 1987 version of the plan.

"Courts construe ERISA plans, as they do other contracts, by 'looking to the terms of the plan' as well as to 'other manifestations of the parties' intent.'"[109] "The words of a plan may speak clearly, but they may also leave gaps. And so a court must often 'look outside the plan's written language' to decide what an agreement means."[110]

The suspension provision in the 1987 plan provides:

> (a) Except as provided herein, if a **Pensioner** who is younger than Normal Retirement Age subsequently becomes employed in [covered work], his pension payments shall be suspended for any calendar month in which he is so employed. . . .
>
> (b) If a **Pensioner** who has attained Normal Retirement Age subsequently becomes employed in [covered work], his pension payments shall be suspended for any calendar month in which he is so employed. After that period, his pension shall again become payable.
>
> (c) If a **Pensioner** becomes employed in [covered work], he must notify the Trustees, in writing, within 15 days following commencement of such employment. If he fails to give such written notice with[in] such 15-day period and . . . (ii) he has attained Normal Retirement Age[,] it will be presumed, unless and until the **Pensioner** provides evidence to the contrary, that he was employed in [covered work] for as long as the employer by whom he is employed has been engaged in the project on which he is working.

---

[108] ECF No. 76-2.

[109] *U.S. Airways v. McCutchen*, — U.S. —, 133 S.Ct. 1537, 1549 (2013) (quoting *Firestone Tire & Rubber Co.*, 489 U.S. 101, 113 (1989)).

[110] *Id.* (quoting *Amara*, 563 U.S. at 436).

(d)  A **Pensioner** shall provide the Trustees with such information as they may request in order to establish the nature and extent of any employment by the **Pensioner** after the date of commencement of benefits.  Any pension payments otherwise due may be withheld pending adequate response by the **Pensioner** to such request.

(e)  A **Participant whose *pension*** has been suspended shall advise the Trustees in writing when disqualifying employment has ended.  Benefit payments shall be held back until such notice is filed with the Trustees.

(f)  A **Participant** may, in writing, request of the Trustees a determination whether contemplated employment will be disqualifying and the Trustees shall provide the **Participant** with their determination.

(g)  The Trustees shall inform a **Participant** of any suspension of benefits by notice given by personal delivery or first class mail during the first calendar month in which his benefits are withheld.  Such notice shall include a description of the specific reasons for the suspension, a description and a copy of the relevant plan provisions, reference of the applicable regulations of the U.S. Department of Labor, and a statement of the procedure for securing a review of the suspension.

(h)  A **Participant** shall be entitled to a review of a determination suspending his benefits by written request filed with the Trustees within 180 days of the notice of suspension of benefit.  The same right of review shall apply, under the same terms, to a determination by or on behalf of the Trustees that contemplated employment will be disqualifying.[111]

The suspension provision confusingly transitions at paragraph (e) from "Pensioner" to "Participant."  "Pensioner" is defined in the plan to mean "a person who is retired and who is receiving pension benefits under this Plan, or to whom a pension would be paid but for the time for administrative processing."[112]  "Participant" means "an Active Participant, (b) a Pensioner, (c) Beneficiary, or (d) a Vested Participant."[113]  Paragraph (e) is particularly confusing because it discusses a "Participant" whose "pension has been suspended," but the suspension provision as a whole does not provide the context in which it would be suspended, other than for a "Participant"

---

[111] ECF No. 76-2 at 41–42, Art. 8, § 9(a)–(h) (emphasis added).

[112] ECF No. 76-2 at 26, Art. 1, § 15.

[113] *Id.* at § 13.

1    who also qualifies as a "Pensioner."[114]

2         A reasonable interpretation of this suspension provision is that Pensioners and

3    Participants alike will have their benefit payments suspended while they are employed in covered

4    work.  But equally reasonable is that when "Participant" is used in this provision, it is in the more

5    encompassing sense—its definition includes a "Pensioner"— so the entire suspension provision

6    applies only to a "Participant" who is also a "Pensioner."

7         The defendants identify paragraphs 9(b) and (e) as examples of inconsistent use of the

8    terms "Pensioner" and "Participant" in the plan documents.[115]  They also identify three other

9    places in the plan documents where "Pensioner" and "Participant" are used inconsistently: in

10   order to retire before normal retirement age, "a Pensioner must withdraw completely and refrain

11   from any employment"; the SPD provides that a "Participant" can obtain an advanced

12   determination from the trustees whether contemplated employment would be covered work and

13   thus excludes "Pensioners"; and the "Prohibited Employment After Age 65" portion of the SPD

14   uses "Pensioner" and "Participant" interchangeably.[116]

15        This suspension provision is ambiguous.  "An ambiguity exists when the terms or words

16   of a pension plan are subject to more than one reasonable interpretation."[117]  "[O]nly by

17   excluding all alternative readings as unreasonable may [a court] find that a plan's language is

18   plain and ambiguous."[118]  The terms "Pensioner" and "Participant" are ambiguously used in the

19   plan documents, especially in the suspension provision, and I cannot narrow it down to a single

20   interpretation.  I thus look to extrinsic evidence to determine the meaning of this provision.

21        To show that the suspension provision had previously been applied to both "Pensioners"

22

23   [114] *Compare* ECF No. 76-2 at 41, Art. 8, § 9(e) *with* ECF No. 76-2 at 41, Art. 8, § 9(a)–(b).

24   [115] ECF No. 155 at 23.

25   [116] *Id.* at 23–24.

26   [117] *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000) (citing *Vizcaino v.*
27   *Microsoft Corp.*, 97 F.3d 1187, 1194 (9th Cir. 1997) (en banc)).

28   [118] *Id.* (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999)).

1    and "Participants," the defendants identify a notice that they purport was sent to all participants

2    regarding the 1992 amendment.  It stated: "Previously, benefits were suspended for each month

3    after Normal Retirement Age in which a Participants works more than 40 hours" in covered

4    employment.[119]

5         Allbaugh counters with evidence that suggests that the claim made in that notice might

6    not be accurate.  He offers a resolution that was adopted at the trustees' May 16, 1991, board

7    meeting "To suspend benefits for participants that have attained Normal Retirement Age (NRA)

8    and continue working over 40 hours per month.  A participant will receive full benefit accrual for

9    all work and an actuarial adjustment for each month he works 40 hours or less."[120]  Allbaugh also

10   shows that the 1991 amendment was adopted after the plan's consultant advised that the absence

11   of a provision authorizing a suspension for active participants, combined with the failure to pay

12   actuarial increases for delayed normal retirement benefits, could constitute a "vesting violation

13   for which the trustees could be sued and the fund could lose it tax-favored status."[121]  Allbaugh

14   adds that defendants notified the DOL in 1991 that the plan was modified "to suspend benefits

15   for participants that have reached Normal Retirement Age (NRA) and continue working over 40

16   hours per month."[122]  And, finally, he shows that the defendants' person most knowledgeable

17   testified that, prior to the 1991 amendment, actuarial adjustments were paid to participants who

18   worked past age 65 in covered employment.[123]

19        The net effect of this evidence is a record that reveals triable issues of fact about whether

20   the suspension provision was intended to apply to both "Pensioners" and "Participants" before

21   the 1991 and 1992 amendments were adopted.  Accordingly, summary judgment is not warranted

---

[119] ECF No. 170 at 25.

[120] ECF No. 171 at 15.

[121] *Id.* at 17.

[122] *Id.*

[123] ECF No. 161 at 41.

1   on Counts 2–4.

2        **G.    Defendants are entitled to summary judgment on the portion of Count 5 seeking penalties for delayed access to actuarial tables, but issues of fact preclude summary judgment on the remainder of this claim.**

3

4       Allbaugh moves for summary judgment on Count 5 and seeks statutory penalties in the

5   total amount of $18,150 for the 88 days that the defendants allegedly delayed in his access to the

6   trust agreement and the 77-day delay in access to the actuarial tables that were used to calculate

7   his benefit payments.[124]   ERISA authorizes courts to penalize a plan administrator who "fails or

8   refuses to comply" with a participant's request for any information that the administrator is

9   required to furnish in an amount of up to $110 per day from the date of the failure or refusal.[125]

10   The documents that the plan administrator is required to furnish upon request include the current

11   summary plan description, the "latest annual report, any terminal report, the bargaining

12   agreement, trust agreement, contract, or other instruments under which the plan is established or

13   operated."[126]

14               *1.    Delayed actuarial tables are not actionable.*

15       Allbaugh has shown that he requested a copy of the actuarial tables on September 28,

16   2009,[127] and he did not receive them until December 14, 2009.[128]   But actuarial tables are not

17   among the enumerated documents that a plan administrator like the Board of Trustees of the

18   California Field Ironworkers Pension Trust is required to provide under ERISA, and I do not find

19   that those documents qualify under the statute's catchall "other instruments under which the plan

20   is established or operated."[129]   ERISA regulation 29 C.F.R. § 2560.503–1(h)(2)(iii) states that

21

22   [124] ECF No. 145 at 52–53.

23

24   [125] 29 U.S.C. § 1132(c)(1).

25   [126] 29 U.S.C. § 1024(b)(4).

26   [127] ECF No. 145-2 at 5, ¶ 16; ECF No. 145-2 at 9.

27   [128] ECF No. 145-2 at 5, ¶ 19; ECF No. 145-2 at 16.

28   [129] 29 U.S.C. § 1024(b)(4).

1    employee benefits plans like California Field Ironworkers Pension Trust here must provide to a

2    claimant "upon request and free of charge, reasonable access to, and copies of, all documents,

3    records, and other information relevant to the claimant's claim for benefits."[130]  And the actuarial

4    tables were arguably relevant to Allbaugh's claim for benefits.  But statutory penalties under

5    ERISA "can only be assessed against 'plan administrators' for failing to produce documents that

6    they are required to produce as plan administrators."[131]

7          Because "29 C.F.R. § 2560.503– 1(h)(2)(iii) does not impose any requirements on plan

8    administrators, [it] . . . cannot form the basis for a penalty under 29 U.S.C. § 1132(c)(1)."[132]

9    Thus, Allbaugh is not entitled to relief under 29 U.S.C. § 1132(c)(1) for the defendants' delay in

10    providing him copies of the actuarial tables.  Accordingly, the defendants are entitled to summary

11    judgment on the portion of Count 5 that seeks statutory penalties for their failure to timely

12    furnish the actuarial tables.

13          ***2.        A delayed trust agreement is actionable, but issues of fact remain.***

14          Allbaugh has also shown that he requested a copy of the trust agreement on January 7,

15    2010.[133]  Trust agreements are among the documents that plan administrators can be penalized

16    under 29 U.S.C. § 1132(c)(1) for failing to timely provide upon request.  It is not clear, however,

17    *when* Allbaugh received a copy of the trust agreement.  Allbaugh provides an email from a plan

18    employee dated February 17, 2010, stating that Allbaugh had already received the trust

19    agreement, which had been sent to him via registered mail along with other information that he

20    requested.[134]  But Allbaugh does not "believe that the entire trust agreement was enclosed with"

21

22

23    ───────────────

[130] *Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1160–61 (9th Cir. 2016).

24

[131] *Id.* at 1162.

25

[132] *Id.*

26

[133] ECF No. 145-2 at 6, ¶ 22; ECF 145-2 at 18.

27

[134] ECF No. 145-2 at 7, ¶ 30; ECF 145-2 at 34.

28

1  that letter,[135] and he is "not exactly sure when [he] received a complete copy of" that

2  agreement.[136]  Because the parties genuinely dispute when Allbaugh received a copy of the trust

3  agreement, summary judgment is not available on this remaining portion of Count 5.

4  **III.    Motion for Leave to Supplement**

5      Allbaugh moves for leave to supplement his already voluminous briefs with additional

6  argument concerning how the Ninth Circuit's recent decision in *Moyle*[137] further supports his

7  arguments.[138]  The defendants do not object to Allbaugh's request but ask to file a response if I

8  intend to grant Allbaugh leave to supplement.[139]

9      I considered *Moyle* in my analysis of Allbaugh's motion for reconsideration,[140] and I took

10 his supplement into consideration.  But because I do not find that *Moyle* changes anything, and I

11 am denying Allbaugh's reconsideration request (and defendants will thus suffer no prejudice by

12 not getting to chime in further), I do not find that response briefing by the defendants is

13 necessary.  Accordingly, I grant Allbaugh's motion for leave to supplement, but without

14 entertaining further briefing from the defendants on *Moyle*.[141]

15 **IV.    Motion to Seal**

16     Finally, I consider the defendants' request to seal the declaration of Leanne Vance and

17 exhibit 1 to that declaration, submitted as part of defendants' opposition to Allbaugh's motion to

18 alter or amend the class certification order.[142]  "The public has a 'general right to inspect and

19

20 [135] ECF No. 145-2 at 7, ¶ 30.

21 [136] *Id.*

22 [137] 823 F.3d 948.

23 [138] ECF No. 178.

24 [139] ECF No. 181.

25 [140] *See supra* at pp. 11–12.

26 [141] ECF No. 177.

27

28 [142] ECF No. 150-1 at 2–3 (Vance decl.); 5–20 (exhibit 1 thereto).

copy public records and documents including judicial records and documents.'"[143]  "Although the common law right of access is not absolute, '[courts] start with a strong presumption in favor of access to court records.'"[144]  "A party seeking to seal judicial records can overcome the strong presumption of access by providing 'sufficiently compelling reasons' that override the public policies favoring disclosure."[145]

"When ruling on a motion to seal court records, the district court must balance the competing interests of the public and the party seeking to seal judicial records."[146]  "To seal the records, the district court must articulate a factual basis for each compelling reason to seal[,] [which] must continue to exist to keep judicial records sealed."[147]  The Ninth Circuit has, however, "'carved out an exception to the presumption of access' to judicial records" that is "'expressly limited to' judicial records 'filed under seal when attached to a *non-dispositive* motion.'"[148]  "Under the exception, 'the usual presumption of the public's right is rebutted[,]'" so "a particularized showing of 'good cause' under [FRCP] 26(c) is sufficient to preserve the secrecy of sealed discovery documents attached to non-dispositive motions."[149]  I find that the lower "good cause" standard applies in this context—the response that the defendants seek to seal documents in conjunction with is not dispositive because the motion that it addresses seeks

---

[143] *In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1118–19 (9th Cir. 2012) (quoting *Nixon v. Warner Commcns., Inc.*, 435 U.S. 589, 597 (1978)).

[144] *Id.* at 1119 (quoting *Foltz v. St. Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[145] *Id.* (quoting *Foltz*, 331 F.3d at 1135).

[146] *Id.* (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

[147] *Id.* (citing *Kamakana*, 447 F.3d at 1179; *Foltz*, 331 F.3d at 1136).

[148] *Id.* (quoting *Foltz*, 331 F.3d at 1135).

[149] *Id.* (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002); *Foltz*, 331 F.3d at 1135, 1138).

to alter or amend the class-certification order.[150]

Defendants have demonstrated good cause to seal exhibit 1 but not the declaration itself. Exhibit 1 contains a selection of benefit-suspension and reinstatement letters that were sent to the participants.[151]  Those letters contain private personal information like names, addresses, ages, benefit-dispute details, and portions of social security numbers.  Releasing the information contained in those letters could result in the invasion of the participants' privacy.  But the same cannot be said for Vance's declaration.  It contains no personal information regarding the participants or non-parties, and it does not appear to contain any other form of confidential information.  Accordingly, I grant the motion to seal as to exhibit 1 [ECF No. 150-1 at 5–20], but I deny the motion as to Vance's declaration [ECF No. 150-1 at 2–3].

## Conclusion

Accordingly, IT IS HEREBY ORDERED that:

- Allbaugh's motion for reconsideration **[ECF No. 137] is DENIED**;

- Defendants' motion for summary judgment **[ECF No. 142] is GRANTED as to** to the portion of Count 1 alleging claims under 29 U.S.C. § 1132(a)(1)(B) and the portion of Count 5 seeking statutory damages for the failure to timely provide Allbaugh with a copy of the actuarial tables; **it is DENIED in all other respects**;

- Defendants' request for judicial notice **[ECF No. 144] is DENIED**;

- Allbaugh's motion for summary judgment **[ECF No. 145] is DENIED**;

- Allbaugh's motion to supplement **[ECF No. 178] is GRANTED**; and

- Defendants' motion to seal the declaration of Leanne Vance and exhibit 1 thereto **[ECF No. 150] is GRANTED in part and DENIED in part: the Clerk of Court is directed to SEAL** exhibit 1 **[ECF No. 150-1 at 5–20] only.**

---

[150] Allbaugh does not oppose the motion.

[151] ECF No. 150.

33

1    IT IS FURTHER ORDERED that **this case is referred to a Magistrate Judge to**

2 **schedule a MANDATORY SETTLEMENT CONFERENCE**.

3    DATED: October 18, 2016

4                                                                     _____
                                                                     Jennifer A. Dorsey
5                                                                     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28